**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LUKE MATTHEWS, CARLOS GOMEZ, GENTL BONDS,**
**ROBERT SMITH, ROBERT NEGRON, and KASIEM CHAVES,**

                  **Plaintiffs,**
    vs.                                                            **9:17-cv-00503**

**ANDREW CUOMO, Governor of the State of New York; NEW**
**YORK STATE DEPARTMENT OF CORRECTIONS AND**
**COMMUNITY SUPERVISION ("DOCCS"); NEW YORK**
**STATE OFFICE OF MENTAL HEALTH ("OMH"); DAVID**
**ROCK, Superintendent of Upstate Correctional Facility; OSMAN**
**YILDIZ, Sullivan Correctional Facility Mental Health Specialist;**
**CLINTON CORRECTIONS OFFICERS JOHN and/or JANE**
**DOES 1, 2, 3, etc.; UPSTATE CORRECTIONS OFFICERS**
**JOHN and/or JANE DOES 1, 2, 3, etc.; NEW YORK STATE**
**OFFICE OF SPECIAL INVESTIGATIONS ("OSI") OFFICERS**
**JOHN and/or JANE DOES 1, 2, 3, etc.; NEW YORK STATE**
**POLICE ("NYSP") OFFICERS JOHN and/or JANE DOES 1, 2,**
**3, etc.; CORRECTIONAL EMERGENCY RESPONSE TEAM**
**("CERT") OFFICERS JOHN and/or JANE DOES 1, 2, 3, etc.;**
**OMH MEDICAL PROFESSIONALS JOHN and/or JANE DOES**
**1, 2, 3 etc.; UPSTATE MEDICAL OFFICIALS JOHN and/or**
**JANE DOES 1, 2, 3 etc.; and SULLIVAN MEDICAL**
**OFFICIALS JOHN and/or JANE DOES 1, 2, 3 etc., all of whom**
**are sued in their individual capacities,**

                                   **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

                                   **DECISION & ORDER**

**I.**      **INTRODUCTION**

      Plaintiffs Luke Matthews, Carlos Gomez, Gentl Bonds, Robert Smith, Robert Negron

1

and Kasiem Chaves, all inmates in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action in the Southern District of New York asserting claims under 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the New York State Constitution, and New York common law. Dkt. # 1.  Plaintiffs subsequently abandoned their Americans with Disabilities Act and Rehabilitation Act claims. *See* Dkt. # 33.

Defendants Andrew Cuomo, Governor of the State of New York, David Rock, former Superintendent of Upstate Correctional Facility, Osman Yildiz, Social Worker at Sullivan Correctional Facility, DOCCS, and the New York State Office of Mental Health ("OMH") moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to transfer venue to the Northern District of New York pursuant to Federal Rule of Civil Procedure 12(b)(3). Dkt. # 31.  Plaintiffs opposed the motion, dkt. # 33, and Defendants filed a reply.  Dkt. # 37.  In a May 1, 2017 Memorandum Order, the Southern District of New York transferred venue to the Northern District and left undecided the portion of the motion seeking dismissal. Dkt. # 38.  The Court now addresses the dismissal portion of the motion.

## II.   BACKGROUND

The Court presumes familiarity with the allegations in the 37-page, 280- paragraph Complaint, and will address relevant specific allegations in the Discussion section, below. For background purposes, the Court repeats the facts from the Southern District's Memorandum Order:

2

> Plaintiffs are New York state prisoners under the custody of DOCCS. Plaintiffs' claims stem from incidents that occurred after Richard Matt and David Sweat escaped from the Clinton Correctional Facility ("Clinton") on June 6, 2015.   At the time of the escape, plaintiffs were incarcerated at Clinton. Following the escape, plaintiffs and other prisoners were transferred to Upstate Correctional Facility ("Upstate") and then again to Sullivan Correctional Facility ("Sullivan").  Plaintiffs allege that they were unlawfully beaten, abused, denied medical treatment, and otherwise "terrorized" while housed at the three correctional facilities and also while being transferred from Clinton to Upstate.
>
> Specifically, plaintiffs allege that after Matt and Sweat escaped from Clinton, Clinton was placed on "lockdown" and plaintiffs and other prisoners were confined to their cells. Over the course of the next several days, plaintiff Gomez and others were interrogated about the escape; during the interrogations they were physically assaulted and unlawfully threatened.
>
> Approximately ten days after the escape, Correctional Emergency Response Team ("CERT") Officers began transferring plaintiffs and other inmates from Clinton to Upstate.  During the transfer, the CERT Officers assaulted and verbally abused plaintiffs Matthews, Bonds, and Smith.  When they arrived at Upstate, the CERT Officers told plaintiffs not to report any injuries or physical abuse to the Upstate medical staff.  Plaintiffs were also in solitary confinement and deprived of medical attention.[1]
>
> Plaintiffs were subsequently transferred to Sullivan.  The only allegations specific to Sullivan are that Matthews received inadequate mental health treatment from defendant Yildiz, was improperly provided medication in a crushed form, received an MRI in an untimely manner, and was denied treatment of injuries sustained at Clinton, and that Gomez never received certain medicine that was prescribed to him.

Dkt. # 38, pp. 2-3 (footnote added).

### III.   STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the Court must accept "all factual

---

[1] With regard to alleged deprivations of medical care, plaintiff Matthews alleges that he is a type 2 diabetic, requested his medication approximately twenty-four hours after arriving at Upstate, but never received his medication (Compl.¶¶ 206-207); plaintiff Gomez alleges he suffers from scoliosis and was denied medication for five days (Compl. ¶ 208); and plaintiff Negron alleges he suffers from arthritis, asthma, and cervical and spinal stenosis and did not receive his inhaler or aspirin for five days. Compl.¶ 208. Plaintiff Negron further alleges he was denied his arthritis medication during incarceration at Upstate, which apparently lasted thirteen days. Compl. ¶ 208. There are no allegations specific to plaintiff Smith.

allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation and internal quotations marks omitted). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (citations omitted). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Luna v. N. Babylon Teacher's Org.*, 11 F. Supp.3d 396, 401 (E.D.N.Y. 2014); *see Faber v. Metropolitan Life Ins.*, 648 F.3d 98, 104 (2d Cir. 2011).

## IV. DISCUSSION

### a. Title VI of the Civil Rights Act of 1964

Plaintiffs bring claims pursuant to Title VI of the Civil Rights Act of 1964 against DOCCS, alleging that the acts complained of "were motivated by racial animus, and were intended to discriminate on the basis of race." Compl. ¶ 257. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be

excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To state a claim for a violation of Title VI, a plaintiff must show, through specific factual allegations that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendants' action." *Joseph v. Metropolitan Museum of Art*, 2016 U.S. Dist. LEXIS 77961, *7 (S.D.N.Y. June 15, 2016)(citations omitted). "In order to establish intentional discrimination, Plaintiff 'must show that the decision maker selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group.'" *Id.* (quoting *Soberal-Perez v. Heckler*, 717 F.2d 36, 42 (2d Cir. 1983) (internal quotation marks, citation, and alterations omitted)).

Defendants argue that plaintiffs have failed to state a claim for a violation of Title VI because they "failed to allege that they were discriminated against on the basis of their race. Rather, their allegations belie any such motivation as they allege that they were subjected to mistreatment due to the State's need to determine how two inmates were able to escape from Clinton and where those two inmates might have gone." Def. MOL, pp. 12-13. Defendants further maintain that while plaintiffs identify themselves as members of minority groups, and plaintiff Smith alleges he was subjected to racial epithets, "these allegations in no way establish that DOCCS conducted the investigation into the escape of two inmates as a pretext to discriminate against plaintiffs." *Id.* p. 13.

Plaintiffs counter that all plaintiffs are each either African-American or Latino, (*see*

Compl. ¶¶ 8–13),[2] and argue that "[a]lthough there were many Caucasian men incarcerated at Clinton prior to the escape, including both escapees, excessive and malicious force was used only against people of color." Pl. MOL, pp. 14-15.  Plaintiffs also point out that plaintiff Smith asserts that CERT team officers repeatedly used racially derogatory comments toward him. *Id.* p. 15 (citing Compl. ¶¶ 107, 108, 110, and 115).

If, following the escape of the two prisoners, excessive and malicious force was used by DOCCS officers only against people of color, this would provide an inference that the DOCCS officers' actions were motivated by discriminatory animus.  But as defendants point out, this allegation is not contained in the Complaint and therefore cannot be considered on the instant motion. *See J.E. v. Chappaqua Central School Dist.*, 2015 U.S. Dist. LEXIS 108937 (S.D.N.Y. August 17, 2015)("plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [a] a motion to dismiss.").  Further, although plaintiffs describe the conduct directed at them individually, the allegations in the Complaint indicate that DOCCS officers' conduct was directed at numerous Clinton inmates and there is no indication whether these other inmates were members of a protected group. *See* Compl ¶ 44 ("Upon information and belief, interrogations of other incarcerated people included slamming heads into desks, wrapping heads with plastic bags, slamming heads into pipes, punches to the head and ribs, and threats of water boarding."); ¶ 45 ("On or about June 8th, Clinton Corrections Officers began a facility wide "Cell Frisk.""); ¶ 49 ("During the "Cell Frisk," Clinton Corrections Officers yelled to the incarcerated people, in

---

[2]Plaintiffs note that Plaintiff Smith is also a practicing Muslim, Compl. ¶ 11, and was called by CERT team officers, *inter alia*, a "Jihad nigger" and a "fucking terrorist."  To the extent the first statement is racially derogatory, it can form the basis of a Title VI claim.  But Title VI does not protect against religious discrimination so, to the extent Smith is a practicing Muslim or was referred to as a terrorist because of his religion, those facts are irrelevant to determining whether plaintiffs stated cognizable Title VI claims.

6

sum and substance, "Don't you dare say a fucking word about this.""); ¶ 77 ("As Plaintiffs BONDS, CHAVES, and several other incarcerated people sat on the bench, CERT officers walked through the waiting area, threatening everyone with physical force if they lifted their heads or spoke."); ¶ 78 ("Plaintiff Bonds could hear other individuals being assaulted by CERT Officers, but did not lift his head to witness the assault because he feared for his personal safety if he disobeyed an order."); ¶ 164 ("Plaintiffs Matthews, Gomez, Smith, Negron and several other incarcerated people sat on benches in the waiting area, in mechanical, full body restraints, while CERT Officers walked by and verbally assaulted him."); ¶ 188 ("Plaintiffs Smith, Negron, and approximately six other incarcerated people were eventually escorted to the bus, with two CERT Officers assigned to each incarcerated person, and placed in seats."); ¶ 191 ("Plaintiffs Matthews, Gomez, Smith, Negron and the other incarcerated people were taken to Upstate.").

Absent an allegation that DOCCS officers' use of excessive and malicious force was directed only at members of a protected group, the intentional discrimination element of plaintiffs Matthews, Gomez, Bonds, Negron, and Chaves's Title VI claims relies solely upon the racially derogatory comments made individually to Smith. *See* Compl. at ¶¶ 107-110, 115, 167.  This is insufficient.  While Smith's Title VI claim passes the plausibility test,[3] *see Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) (finding that comments such as "send [African-Americans] to school, clean them up and they still belong in the cotton field," "I'm tired of black people taking taxes," and comments about African-Americans receiving

---

[3]Whether Smith can establish that discrimination was a substantial or motivating factor for the DOCCS officers' action toward him, as opposed to only seeking to obtain information relating to the whereabouts of Inmate Matt and Inmate Sweat, is an issue that cannot be resolved on this motion.

7

welfare is sufficient to give rise to an inference of discriminatory intent), the Title VI claims by the other five plaintiffs are merely formalistic recitals of the elements of a claim that does not pass muster under *Iqbal*. Accordingly, defendants' motion in this regard is granted as to plaintiffs Matthews, Gomez, Bonds, Negron, and Chaves but denied as to plaintiff Smith.

### b. State Law Claims Against the State of New York

Defendants move to dismiss the state law claims against the State of New York, arguing that the claims in federal court are barred by the Eleventh Amendment. Def. MOL, p. 17. Plaintiffs failed to respond to this argument. *See* Pl. MOL, pp. 15-17.[4] Because the Eleventh Amendment bars state law claims against the State of New York in federal court, *see, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-47 (1993); *M.H. v. Mount Vernon City Sch. Dist.*, 2014 U.S. Dist. LEXIS 32620, at *30-31 (S.D.N.Y. Mar. 3, 2014); *see also Robinson v. New York*, 2010 U.S. Dist. LEXIS 3639 (W.D.N.Y. January 12, 2010)("[T]he Court of Claims has exclusive jurisdiction over claims for money damages against the State…."); *Joy v. New York*, 2010 WL 3909694, at *2 (N.D.N.Y. Sept. 30, 2010)("The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity.")(citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)), and because plaintiffs are deemed to have consented to this aspect of

---

[4]Plaintiffs argue that the Eleventh Amendment does not bar their Title VI claims or their state law claims against the individual defendants, but defendants did not seek dismissal of these claims on this basis.

the motion by failing to respond to it, *see* N.D.N.Y. L.R. 7.1(b)(3);[5] *see also De Sole v. Knoedler Gallery, LLC*, 137 F. Supp.3d 387, 410 (S.D.N.Y. Sept. 30, 2015)(dismissing claim as abandoned when the plaintiff failed to respond to the arguments on a motion to dismiss), the motion is this regard is granted.

### c. State Law Claims Against Superintendent Rock

Plaintiffs' sole claims against Superintendent Rock are for Intentional Infliction of Emotional Distress (Sixth Cause of Action), Negligence (Seventh Cause of Action), Negligent Infliction of Emotional Distress (Eighth Cause of Action) and *Respondeat Superior* (Ninth Cause of Action).  Defendants contend that these claims must be dismissed pursuant to New York Corrections Law § 24 ("section 24")*.*  Plaintiffs argue that section § 24 is unconstitutional and "disempowers the federal judiciary's supplemental jurisdiction authority to hear state law claims brought in conjunction with federal constitutional and/or civil rights claims." PL. MOL, at p. 17.

Section 24 "precludes 'the assertion of claims against corrections officers in any court, including the federal courts,' by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out of the acts committed by corrections officers within the scope of their employment.'" *Lopez v. Whitmore*, 2015 WL 4394604, at \*12 (N.D.N.Y. July 16, 2015)(quoting *Baker v. Coughlin*, 77 F.3d 12, 15 (2d

---

[5]This provides in relevant part:

> Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(b)(3).

Cir.1996)); *see* N.Y. Correct. Law § 24.[6] Under this statute, New York courts other than the Court of Claims "lack jurisdiction over [state law] claims for money damages brought against DOCS . . . officials in their personal capacities arising from conduct within the scope of their employment." *Hassell v. Fischer*, 2015 U.S. Dist. LEXIS 43367, at *34 (S.D.N.Y. Apr. 1, 2015).

Citing to *Haywood v. Drown*, 556 U.S. 729, 129 S. Ct. 2108, 173 L. Ed.2d 920 (2009), plaintiffs contend that section 24 is unconstitutional. The argument lacks merit. In *Haywood* "the United States Supreme Court held that [section 24], to the extent that it relegates to the New York State Court of Claims civil rights actions brought pursuant to 42 U.S.C. § 1983, is inconsistent with the Supremacy Clause and is, therefore, unconstitutional." *Joy*, 2010 WL 3909694, at *4 (citing *Haywood v. Drown*, 556 U.S. 729, 129 S .Ct. 2108, 173 L. Ed.2d 920 (2009)). In reaching this decision, "[t]he *Haywood* Court held that New York State, having created courts of general jurisdiction that routinely hear section 1983 actions against all types of state actors, 'is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy.'" *Id.* (quoting *Haywood*, 129 S .Ct. at 2117 (footnote omitted)). However, the Supreme Court in *Haywood* found

---

[6]In pertinent part, section 24 provides:

1. No civil action shall be brought in any court of the state ... against any officer or employee of the department ... in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24.

10

section 24 to be in violation of the Supremacy Clause only with respect to claims brought under section 1983. *Id.* (citing *Haywood*, 129 S .Ct. at 2117–18). "While the Supreme Court concluded that section 24 violates the Supremacy Clause as it applies to claims brought under section 1983, it did not find the statute unconstitutional when applied to claims arising under New York State law." *Cole v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2016 WL 5394752, at *32 (N.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016); *see Small v. N.Y.*, 2017 WL 1176032, at *7, n. 5 (W.D.N.Y. Mar. 30, 2017) (Section 24 "bars only those claims brought under state law, not federal claims brought under § 1983.") (citing *Haywood*, 556 U.S. at 740, 129 S. Ct. at 2117). "After *Haywood*, the courts of this district have unanimously held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state-law claims against DOCS officials." *Joy*, 2010 WL 3909694, at *4 (collecting cases).

Plaintiffs' position that the Court may not enforce section 24 because it is unconstitutional under *Haywood* is clearly misplaced. "Claims brought pursuant to state law do not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear pendent state law claims." *Rucano v. Koenigsmann*, 2014 U.S. Dist. LEXIS 44085, *16 (N.D.N.Y. March 3, 2014), *adopted by, dismissed in part by* 2014 U.S. Dist. LEXIS 44637 (N.D.N.Y. March 31, 2014)(citations omitted); *see also May v. Donneli*, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) (Sharpe, J., adopting report and recommendation by Treece, M.J.) ("A claim brought pursuant to state law does not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction

11

to hear [a] pendent state law claim.").

The Court also finds unpersuasive plaintiffs' argument that section 24 is unconstitutional because prevents the Court from exercising its supplemental jurisdiction. Section 24 does not prohibit the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c), *see Rounds v. Thompson*, 2013 WL 3187074, at *4 (N.D.N.Y. June 20, 2013)("[C]ourts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Corrections Law § 24."), but rather limits the Court's subject matter jurisdiction over certain state law claims against a specific class of state actors. *See Jackson v. Yando*, 2016 WL 6267967, at *2 (N.D.N.Y. Oct. 26, 2016) (After finding that section 24 applied, the court dismissed the plaintiff's state law claims for lack of subject matter jurisdiction.). The statute does not "disempower[] the federal judiciary's supplemental jurisdiction authority to hear state law claims" as plaintiffs contend, but rather removes from federal court jurisdiction a certain class of state law claims against particular state actors. Plaintiffs' right to pursue all of their state law claims are not inhibited, and they have failed to supply authority supporting the proposition that section 24 works a constitutional violation on them.

Applying section 24, dismissal of the state law claims against Superintendent Rock is required. "It is well settled that when this Court exercises pendent jurisdiction over a state cause of action, it must apply the substantive state law." *Francis v. Fiacco*, 2016 WL 3448617, at *3–4 (N.D.N.Y. June 20, 2016)(citing, *inter alia*, *Baker*, 77 F.3d at 15 (explaining that the plaintiff's state law claims must be dismissed because "a federal court

12

acts essentially as a state court in addressing pendent state law claims")). "Section 24 of New York Correction Law governs substantive rights; it is not procedural." *Id.* (citing *Baker*, 77 F.3d at 15). Because a state court would dismiss the state law claims against Superintendent Rock, this Court must do the same. Accordingly, defendants' motion in this regard is granted.

### d. State Law Claims Against Governor Cuomo and Mr. Yildiz

#### 1. Negligence Claims

Defendants also argue that the Complaint fails to allege plausible claims of negligence against defendants Cuomo and Yildiz. The Court agrees.

Plaintiffs allege in the "Seventh Cause of Action - Negligence" that "defendants" owed the plaintiffs "a duty of care, including the duty to exercise due care in the course of their duties and the duty to protect incarcerated people from the intentional misconduct of other DOCCS officers; that the defendants "negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances;" and that as a result of "defendants" conduct plaintiffs suffered damages. Compl. ¶¶ 270-73. In opposition to defendants' argument to dismiss the negligence claims against defendants Cuomo and Yildiz, plaintiffs argue only that plaintiff Matthews suffered pain because he was not sent for an MRI. Pl. Mem. L. p . at p. 21. This allegation is insufficient.

The Complaint alleges that Matthews met with Yildiz, Sullivan Mental Health Specialist, on July 29, 2015 and "described the mental health issues he was suffering from stemming from his assault at Clinton and his confinement at Upstate." Compl. ¶¶ 233-34. It

does not allege that Matthews requested Yildiz to send him for an MRI, or that Yildiz had any reason to order such a procedure based on the July 29, 2015 mental health consultation as reported in the Complaint. *Id.* Plaintiffs' conclusory allegations fail to present facts supporting a plausible negligence claim against Yildiz. Accordingly, the Seventh Cause of Action against Yildiz is dismissed.

With regard to Gov. Cuomo, plaintiffs' sole argument in opposition to dismissal of the negligence claim is found in their response to defendants' argument to dismiss the Ninth Cause of Action asserting *respondeat superior* liability.[7] There, plaintiff's argue:

> [P]laintiffs properly pled supervisory liability claims against defendant Cuomo. Defendant Cuomo was at Clinton immediately after the escape, overseeing the investigation, and had ordered OSI officers to do whatever was necessary to obtain information about the escape. (Compl. ¶¶ 34–35). Acting upon defendant Cuomo's orders, defendant OSI officers interrogated people incarcerated at Clinton, including Mr. Gomez, and witnessed Corrections Officers assaulting, choking, and threatening Mr. Gomez. (Compl. ¶¶ 37–38). Defendant Cuomo knew about these unlawful activities, but did nothing to stop them. (*Id.*). Further, this behavior constitutes gross negligence on behalf of defendant Cuomo because he knowingly allowed plaintiffs to be unlawfully assaulted as part of an investigation he oversaw. Thus, plaintiffs sufficiently allege a *respondeat superior* claim against defendant Cuomo.

Def. Mem. L. pp. 22-23.

Despite plaintiffs' argument, the Complaint fails to allege facts supporting a plausible

---

[7] *Respondeat superior* does not provide the basis of an independent or stand-alone cause of action. *DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 350 n. 3 (E.D.N.Y. 2016). It is "only a theory that establishes the liability of a principal or an employer for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Id.* (internal quotation marks and citations omitted); *see Pettengill v. Fireman's Fund Ins., Co.*, 2013 WL 4054635, at *3 (D. Conn. Aug. 12, 2013) ("[R]espondeat superior is a theory of liability rather than an independent cause of action."); *Kogut v. County of Nassau*, 2009 WL 2413648, at *17 (E.D.N.Y. Aug. 3, 2009) ("[T]he theory of *respondeat superior* is not a stand-alone cause of action...."), *partial reconsideration granted*, 2009 WL 5033937 (E.D.N.Y. Dec. 11, 2009). Because a theory of liability premised upon *respondeat superior* must attach to an underlying claim, *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp.2d 89, 112 (E.D.N.Y. 2011), and because the Complaint alleges that *respondeat superior* liability attaches to Gov. Cuomo because he was grossly negligent in his supervision of others, the Court addresses this theory of liability in the context of the negligence claim against Gov. Cuomo.

negligence claim against Cuomo, either by direct conduct or vicariously. Although the Complaint alleges that Cuomo "ordered New York State Office of Special Investigation ("OSI") Officers to do whatever was necessary to obtain information about the escape," Compl. ¶ 35, and "approved and encouraged the interrogation methods Clinton Corrections Officers, OSI investigators, Correctional Emergency Response Team ("CERT") Officers, and NYSP Officers used," *id.* ¶ 37, the Complaint does not allege that Cuomo ordered any officer to take any specific action, that Cuomo witnessed any officer "assaulting, choking, and threatening Mr. Gomez," that Cuomo had any knowledge of any unlawful activities actually taking place, or that Cuomo was in the position to stop such conduct if it occurred. *See generally id.* Thus, there are insufficient facts alleged from which to plausibly conclude that Cuomo himself acted negligently or grossly negligently.

The Complaint also alleges insufficient facts from which to impose *respondeat superior* liability upon Cuomo for negligent conduct that might have been committed by officers at Clinton during the escape investigation. Plaintiffs allege that "[a]t all relevant times, Defendants [*sic*] Officers were employees of DOCCS and/or OMH and were acting within the scope of their employment." *Id.* ¶ 279. Gov. Cuomo is sued only in his individual capacity. *Id.* ¶ 14. Under the facts alleged in the Complaint, there is no plausible basis to conclude that the officers operating at Clinton were Cuomo's direct employees or acting as his agents, thus there is no basis to impose *respondeat superior* liability upon him for the actions of the officers. *See DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 350 n. 3 (E.D.N.Y. 2016) *(Respondeat superior* is "a theory that establishes the liability of a principal or an employer for the employee's or agent's wrongful acts committed within

15

the scope of the employment or agency.")(internal quotation marks and citations omitted). Moreover, to the extent plaintiffs contend that the officers involved in the escape investigation might have been, or believed themselves to be, Cuomo's employees or agents because of his position as Governor, then the claim is against Cuomo in his official capacity. In that case, the claim must be brought in the New York Court of Claims. *See Morell v. Balasubramanian*, 70 N.Y.2d 297 (1987)(where the State is the real party in interest, action must be brought in the Court of Claims); *Derrick v. Bergen*, 2 Misc.3d 396, 398-399 (Sup. Ct. Kings Co. 2003)("claims against a state official acting as a representative of the State in his official capacity…, [] must be brought in the Court of Claims."). Accordingly, the Seventh Cause of Action (Negligence) and Ninth Cause of Action (*Respondeat Superior*) are dismissed as against Gov. Cuomo.

### 2. Negligent Infliction of Emotional Distress Claims

Like the Negligence claims, Plaintiffs' Negligent Infliction of Emotional Distress claims (Eighth Cause of Action) are wholly conclusory. *See* Compl. ¶¶ 274-77.[8] The Court fails to find factual allegations plausibly supporting Negligent Infliction of Emotional Distress claims against defendants Cuomo or Yildiz. Further, plaintiffs failed to provide any argument addressed to the viability of their Negligent Infliction of Emotional Distress claims against

---

[8]The Complaint asserts at the "Eighth Cause of Action - Negligent Infliction of Emotional Distress:"

274. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

275. As Government officials acting in the performance of their duties, Defendants have a duty of care.

276. In breach of that duty, Defendants endangered Plaintiffs' safety and caused them to fear for their safety.

277. As a result, Plaintiffs suffered emotional distress.

16

these two defendants. *See* Pl. Mem. L. pp. 21-22. [9] Thus, the Court deems these claims abandoned. *See De Sole,* 137 F. Supp. 3d at 410; N.D.N.Y. L.R. 7.1(b)(3). Accordingly, the Eighth Cause of Action is dismissed as against Gov. Cuomo and Mr. Yildiz.

### 3. Intentional Infliction of Emotional Distress Claims

Defendants also move to dismiss the Intentional Infliction of Emotional Distress (Sixth Cause of Action) claims against Gov. Cuomo or Mr. Yildiz on the ground that there are no allegations of outrageous conduct by either sufficent to support legally plausible claims. Def. Mem. L. pp. 20-21; *see Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)(In order to succeed on an Intentional Infliction of Emotional Distress claim, plaintiffs must allege "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."). In opposition, plaintiffs argue only that they have alleged sufficient claims of Intentional Infliction of Emotional Distress against the CERT officers who "intentionally screamed threatening and racially offensive insults at plaintiffs, as well as intentionally assaulting them without a lawful basis or purpose and/or falsely imprisoning them in solitary confinement in violation of their Due Process rights." Pl. Mem. L. pp. 21-22.

The Complaint fails to allege outrageous conduct by either Gov. Cuomo or Mr. Yildiz such to support a plausible Intentional Infliction of Emotional Distress claim against either. Further, plaintiffs assert that any injury they suffered from "outrageous conduct" was from the CERT officers. *See* Def. Mem. L. p. 22 ("The injuries that plaintiffs continue to suffer from are a direct result of defendant CERT Officers outrageous conduct."). Accordingly,

---

[9]Plaintiffs argue only that they have asserted plausible Intentional Infliction of Emotional Distress claims against the CERT officers. *See* Pl. Mem. L. pp. 21-22.

the Sixth Cause of Action is dismissed as to Gov. Cuomo and Mr. Yildiz.

## V. CONCLUSION

For the reasons discussed above, defendants' motion to dismiss certain claims in this action [dkt. # 31] is **GRANTED in part and DENIED in part**.

The motion is granted in that:

-All state law claims against the State of New York are dismissed without prejudice to refiling in the New York Court of Claims;

-The Title VI claims of plaintiffs Matthews, Gomez, Bonds, Negron, and Chaves are dismissed without prejudice;

-All state law claims against Superintendent Rock are dismissed without prejudice to refiling in the New York Court of Claims;

-All state law claims against Governor Cuomo and Mr. Yildiz are dismissed without prejudice.

The motion is denied as to plaintiff Smith's Title VI claim.

If plaintiffs intend to move for leave to amend the Complaint, they must do so within fourteen (14) days of the date of this Decision and Order.

**IT IS SO ORDERED.**

Dated: September 22, 2017

Thomas J. McAvoy
Senior, U.S. District Judge