**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LUKE MATTHEWS, CARLOS GOMEZ,**
**GENTL BONDS, ROBERT SMITH,**
**ROBERT NEGRON, and KASIEM CHAVES,**

                                              **Plaintiffs,**

                 **v.**                                              **9:17-cv-00503**

**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS AND COMMUNITY SUPERVISION,**
*et al.*,

                                              **Defendants**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                              **DECISION & ORDER**

**I.    INTRODUCTION**

        Presently before the Court is the defendants' motion to dismiss certain claims

asserted in the Second Amended Complaint.  Dkt. No. 172.  The plaintiffs oppose the

motion, Dkt. No. 178, and the defendants filed a reply. Dkt. No. 183.  The Court has

determined to decide the motion without oral argument.  For the reasons that follow, the

motion is granted in part and denied in part.

**II.    BACKGROUND**

        The plaintiffs are New York state prisoners under the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS").  Their claims stem

from incidents that occurred after Richard Matt and David Sweat escaped from the Clinton

1

Correctional Facility ("Clinton") on June 6, 2015.   At the time of the escapes, the plaintiffs were incarcerated at Clinton.  Following the escapes, the plaintiffs and other prisoners were transferred to Upstate Correctional Facility ("Upstate") and then again to Sullivan Correctional Facility ("Sullivan").

Plaintiffs, through counsel, commenced this action in the Southern District of New York. Dkt. No. 1.  The Southern District transferred venue to this court, and the undersigned ruled on the defendants' initial motion to dismiss the Complaint, dismissing certain claims and defendants. Dkt. No. 41.  Plaintiffs thereafter filed an Amended Complaint, Dkt. No. 62, which the remaining defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 152.  Plaintiffs then filed a Second Amended Complaint ("SAC"), Dkt. No. 167, which the Court initially struck *sua sponte*. Dkt. No. 161.  After reconsideration, the plaintiffs were allowed to proceed via the SAC, and the defendants' motion to dismiss the Amended Complaint was denied as moot.  The SAC is now the operative pleading.

Defendants DOCCS, Timothy Stampfler, Shane Rivers, Darcel Russell, Travis Baxter, Adam Tamer, Shawn Gonyo, Bert Drake, Adam Besaw, Rahn Marion, Nathan Bunker, Darren Butchino, Chad Keysor, Todd Perry, Rafael Rivera, Mark Orzech, Jason Goodspeed, Eric Fessette, Dylan Bombardier, Andrew Burgess, David Duquette, Brian Hartman, L. Sweeney, Michael Tompkins, Michael Guynup, Travis Terry, Ronald Wood, Terry Brunet, Charles Durkin, Jeremiah Brooks, Mark Reif, Patrick Devlin, J. Skiff, Correctional Emergency Response Team ("CERT") Officer 44-23, CERT Officer 44-5,

CERT Officer 44-4, CERT Officer 44-3,[1] Christy Conklin, Dr. Kumar, Mary Kowalchuck, Cherie Fairchild, and Matthew Ranger (hereinafter collectively, the "Moving Defendants") move to dismiss the SAC, in part, pursuant to Fed. R. Civ. P. 12(b)(6). All defendants except for DOCCS are sued in their individual/personal capacities. SAC, ¶¶ 13-17.

The factual allegations underlying the claims in the SAC are asserted from paragraph 18 through paragraph 256. *See* SAC ¶¶ 18-256. Thereafter, the plaintiffs assert two causes of action. The First Cause of Action, brought by all plaintiffs pursuant to 42 U.S.C. §1983, is asserted against "Defendants Clinton Corrections Officers, Skiff, CERT Officers, and Upstate Correctional Facility Medical Officials." SAC ¶¶ 257-262. Plaintiffs assert that the defendants' actions deprived them of their rights under the Eighth and Fourteenth Amendments of the United States Constitution, "more specifically: a. the right to be free from the use of excessive and unreasonable force and seizure; b. the right to be free from cruel and unusual punishment; c. the right to be free from deprivation of liberty without due process of law; and d. the right to equal protection under the law." SAC ¶ 259. The SAC does not identify which of the defendants' actions asserted in paragraphs 18-256 violated which of these rights.

The Second Cause of Action is captioned as brought by Plaintiff Smith pursuant to Title VI of the Civil Rights Act of 1964 against DOCCS. SAC, p. 34. Plaintiffs assert that "[t]he acts and conduct of Defendants Clinton Corrections Officers, Skiff, and CERT Officers complained of herein were motivated by racial animus, and were intended to discriminate

---

[1] The Court granted a motion to seal the identities of CERT Officer 44-23, CERT Officer 44-5, CERT Officer 44-4, and CERT Officer 44-3, and permitted these Defendants to proceed in this action anonymously. Dkt. No. 138.

on the basis of race.  [These defendants] committed the foregoing acts intentionally, willfully, wantonly, maliciously, and/or with such reckless disregard of [the] consequences as to reveal a conscious indifference to the clear risk of death or serious injury to Plaintiffs that shocks the conscience. They are therefore also liable for punitive damages." SAC ¶¶ 264-265.  The SAC does not identify which of the alleged acts in paragraphs 18-256 were motivated by racial animus and/or were intended to discriminate on the basis of race.

## III.    STANDARD OF REVIEW

On a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at  570).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)(quoting *Twombly*, 550 U.S. at 570); *see Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012)( Plausibility is "a standard lower than probability.").  A

claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This pleading standard "demands more than an unadorned, the-defendant-unlawfully -harmed me accusation" in order to withstand scrutiny. *Id.* (citing Twombly, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

A court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds that a different version is more plausible." *Anderson News*, 680 F.3d at 185. "The role of the court at this stage of the proceedings is . . . merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed." *Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016).

## IV. DISCUSSION

### a. Eleventh Amendment Immunity

The defendants move to dismiss any Section 1983 claim brought against DOCCS as barred by the Eleventh Amendment, arguing that no exception to Eleventh Amendment immunity applies because every individual defendant is sued in his or her personal capacity only and there are no claims for injunctive relief. The plaintiffs have failed to respond to this aspect of the defendants' motion.

To the extent that the SAC asserts any Section 1983 claims against DOCCS, these claims are dismissed as barred by the Eleventh Amendment, *see Ennis v. New York Dept. of Parole*, No. 18-CV-00501, 2018 WL 3869151, at *4 (N.D.N.Y. Jun. 12, 2018), *rep. rec.*

5

*adopted*, 2018 WL 3862683 (N.D.N.Y. Aug. 14, 2018); *Rother v. NYS Dept. of Corrections and Community Supervision*, 970 F. Supp.2d 78, 89-90 (N.D.N.Y. 2013), and as abandoned. *See Mainella v. Golub Corp.*, No. 15-cv-1082, 2018 WL 1587049, at *7 (N.D.N.Y. Mar. 28, 2018) ("Where a plaintiff fails to respond to a defendant's arguments regarding some of her claims but responds to its arguments regarding other claims, the courts generally assume that the plaintiff has abandoned those claims."); *Thurmand v. Univ. of Connecticut*, No. 3:18-CV-1140 (JCH), 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019)("Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them.")(collecting cases).

### b. Personal Involvement - Clinton Defendants & Defendant Skiff

Among the moving defendants are thirty-one (31) individual defendants who worked as correctional/security staff at Clinton[2] (the "Clinton Defendants"), and Defendant J. Skiff, an Office of Special Investigations ("OSI") officer. The Clinton Defendants move to dismiss the Section 1983 claims against them because, they argue, none of the allegations in the SAC plausibly suggest that they were personally involved in the alleged constitutional violations. Defendant Skiff moves to dismiss the Section 1983 claims against him, except for one excessive force/failure-to-intervene claim asserted by Plaintiff Gomez, *see* SAC at ¶¶ 30-34, because, he contends, the SAC fails to sufficiently allege his personal involvement.

---

[2]Specifically, Defendants Timothy Stampfler, Shane Rivers, Darcel Russell, Travis Baxter, Adam Tamer, Shawn Gonyo, Bert Drake, Adam Besaw, Rahn Marion, Nathan Bunker, Darren Butchino, Chad Keysor, Todd Perry, Rafael Rivera, Mark Orzech, Jason Goodspeed, Eric Fessette, Dylan Bombardier, Andrew Burgess, David Duquette, Brian Hartman, L. Sweeney, Michael Tompkins, Michael Guynup, Travis Terry, Ronald Wood, Terry Brunet, Charles Durkin, Jeremiah Brooks, Mark Reif, and Patrick Devlin.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (internal quotation marks omitted). As is relevant here, personal involvement may be shown with evidence that "[t]he defendant participated directly in the alleged constitutional violation . . . [or] exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 867 (2d Cir. 1995). A plaintiff's complaint must allege that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Victory v. Pataki*, 814 F.3d 47, 67 (2dCir. 2016) (interior quotation marks and citation omitted). A complaint must contain specific factual allegations—mere conclusory allegations are insufficient to establish personal involvement. *See Brown v. Artus*, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009). "Dismissal is appropriate where . . . the body of the complaint fails to indicate what the defendant did to the plaintiff." *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 220 (N.D.N.Y. 2015) (internal quotation marks and citation omitted).

### 1. Plaintiff Bonds - Excessive Force

Bonds alleges that after he was escorted out of the Administrative Building Waiting Area at Clinton, CERT Officers assaulted him by punching him in the face, choking him with a nightstick, lifting him off the ground while choking him and then slamming him to the ground, repeatedly kicking him with their steel-toed boots while he lay on the ground, and repeatedly pushing him into the walls, radiators, gates, and door frames. SAC ¶¶ 82-87. He asserts that "[u]pon information and belief, Defendant Clinton Corrections Officers,

including Stampfler, Rivers, Sweeney, Brunet, Russell, Baxter, Durkin, Guynup, and Brooks," were present while he was being assaulted[3] by CERT Officers yet "Clinton Corrections Officers" failed to intervene to stop the assaults. SAC ¶¶ 88-90.

These allegations sufficiently state plausible Eighth Amendment excessive force claims against all of the Clinton Defendants. *See Grant v. Annucci*, No. 1:16-CV-00361 EAW, 2019 WL 4751518, at *5 (W.D.N.Y. Sept. 30, 2019)("An individual is personally involved in the use of excessive force if he either (1) directly participates in an assault; or (2) was present during the assault, but did not intervene on behalf of the victim even though he had a reasonable opportunity to do so. . . . ")(interior quotation marks and citation omitted); *see also Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009)("A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so.")(citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). The fact that the plaintiffs plead the Clinton Defendants' personal involvement upon information and belief is of no moment because the identities of the officers working on the dates of the alleged conduct is particularly within the possession and control of the defendants. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)("The *Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.")(internal

---

[3]The use of the phrase "assaulted," in context, is a factual contention not a legal one as the defendants argue.

quotation marks and citations omitted). The identities of the actually-involved Clinton

Defendants can be particularized following discovery.[4]

## 2. Plaintiff Smith - Excessive Force

### A. June 16, 2015

Smith alleges that on June 16, 2015, CERT Officers assaulted him in his cell after he

was handcuffed by punching and kicking him, and slapping him in the head and face. SAC

¶¶ 102-114. Smith also alleges that the CERT Officers dragged him out of his cell by the

handcuffs, causing extreme pain to his hands, wrists, arms, shoulders, and back. SAC ¶

115. The plaintiffs further allege that "Defendant Clinton Corrections Officers, including

Defendants Gonyo, Devlin, Terry, Russell, Baxter, Wood, Reif, Drake, Besaw, and Brooks

were present during the assault" but failed to intervene on Smith's behalf. SAC ¶¶ 120-122.

For the reasons discussed above, Smith plausibly states Eighth Amendment claims against

all of the Clinton Defendants for conduct occurring on June 16, 2015.

### B. Holding Area

Smith also alleges that while he was in the Holding Area at Clinton, a CERT Officer

slapped him in the head and stated "I can kill you and dump your body out here and no one

would find you." SAC ¶ 176. The SAC asserts that "Defendant Clinton Corrections

---

[4]It is unclear from the plaintiffs' memorandum of law whether they are arguing that all of the Clinton Defendants (identified collectively in the SAC as the "Clinton Corrections Officials," SAC ¶ 14) were involved in this and the other claims, or whether they are arguing that only the specifically identified Clinton Defendants were involved. *Compare* Pl. Mem. L., at 3 (arguing that collective pleading is adequate to allege personal involvement) *with id.* ("Here, Plaintiffs were able to alleged the specific role that every Defendant played. Plaintiff Bonds alleged that Defendants Gonyo, Devlin, Terry, Russell, Baxter, Wood, Reif, Drake, Besaw, and [Brooks] either assaulted him or failed to intervene in the unlawful assault. . . . "). In an exercise of caution, the Court will consider it the former and allow the claims to proceed to discovery during which the claims against the Clinton Defendants can be more specifically particularized and narrowed if necessary. Moreover, as explained in the text, the plaintiffs specifically identify each of the Clinton Defendants in one claim or the other. Thus, there is no prejudice to defendants by proceeding to discovery on these claims.

Officers, including XXX[,] were present during the assault on" Smith, SAC ¶ 189, yet failed to intervene to prevent this assault. SAC ¶¶ 190-191. While this pleading lacks specification as to the particular defendants involved in this claim, it is sufficient to allege personal involvement of all the Clinton Defendants.

### 3. Plaintiff Gomez - Excessive Force

#### A. June 16, 2015

Gomez alleges that on June 16, 2015, CERT Officers entered his cell and grabbed him by his neck and choked him while placing him in handcuffs. SAC ¶ 138. He further alleges that "Defendant Clinton Corrections Officers, including Defendants Gonyo, Devlin, Terry, Russell, Baxter, Wood, Reif, Drake, Besaw, and Brooks were present during the assault" but failed to intervene on Gomez's behalf. SAC ¶¶ 140-142. This plausibly states Eighth Amendment excessive force claims against all of the Clinton Defendants.

#### B. June 6 Interrogations

Gomez also alleges that he was "interrogated twice on June 6 by Clinton Sergeants and Lieutenants, including, upon information and belief[,] Marion, Rivera[,] Fessette, Burgess, Duquette, Sweeney, Tompkins, Guynup, Terry, Wood, Brunet, Durkin, Brooks, Reif, and/or Devlin, [and] Clinton Corrections Officers, including Defendants Tamer, Bombardier, Hartman, Orzech, Keysor, Perry, Butchino, Bunker, and Goodspeed, and upon information and belief, defendant Skiff." SAC ¶ 28. He alleges that during "the interrogation," he was placed in a chair with his hands cuffed behind the chair "as Defendants Clinton Officials repeatedly slapped him in the face, choked him, and punched him in his head and ribs." SAC ¶ 29. He alleges that the Defendant Clinton Officials and

Defendant Skiff knew that his constitutional rights were being violated when he was assaulted, but failed to take reasonable steps to intervene on his behalf. SAC ¶¶ 30-32. This plausibly states Eighth Amendment excessive force claims against all of the Clinton Defendants and Defendant Skiff. While it may be, as defendants argue, that it is implausible that all of these defendants were present at the June 6 interrogations, that is an issue that cannot be resolved on this motion. The specifics of Gomez's claim, such as the role that each defendant played, will have to be particularized through discovery.

### C. Additional Interrogations

Gomez further alleges that "[o]ver the next nine days [after the June 6 interrogations] . . . [he] was interrogated approximately six more times and each time, he was similarly assaulted, choked, and threatened by Defendant Clinton Officials and Defendant Skiff." SAC ¶ 34. Although close to being merely a concusory "the-defendants-harmed-me" allegation, when read in context it provides enough factual content to plausibly indicate that the Clinton Defendants and Defendant Skiff engaged in excessive force during the ensuing interrogations. Thus, the claim will be allowed to proceed.

### 4. Plaintiff Negron - Excessive Force

Negron asserts that on June 16, 2015, CERT Officers entered his cell, kicked him in the right hamstring and punched him in the back of his head, knocking him to the ground. SAC ¶ ¶ 150-152. He also asserts that CERT Officers, while handcuffing him, "pulled his thumbs back with such force that Plaintiff Negron thought they were going to break." SAC ¶ 154. Negron further asserts that the CERT Officers removed him from his cell and then "slammed him face first into a wall and pushed him down to his knees." SAC ¶ 156. In

addition, he asserts that when he was unable to crisscrosses his legs behind him as instructed by the CERT Officers, the CERT Officers began kicking his hamstrings. SAC ¶ 158.  Negron asserts that "Defendant Clinton Corrections Officers, including Defendants Gonyo, Devlin, Terry, Russell, Baxter, Wood, Reif, Drake, Besaw, and Brooks were present during the assault" but failed to intervene on his behalf. SAC ¶¶ 162-164.  For the reasons discussed above, Negron's June 16, 2015 excessive force claims against all of the Clinton Defendants will be allowed to proceed.

### 5.  Plaintiff Chaves - Excessive Force

The SAC fails to provide plausible allegations demonstrating the personal involvement of any of the Clinton Defendants or Defendant Skiff in an excessive force violation against Plaintiff Chaves.[5]  Accordingly, any §1983 excessive force claim that Plaintiff Chaves may have against the Clinton Defendants and Defendant Skiff are dismissed.

### 6.  Plaintiff Mathews - Excessive Force

Matthews asserts that while he was in the Holding Area at Clinton, a CERT Officer grabbed him by the neck and began choking him, causing him to nearly lose consciousness. SAC ¶¶ 179-181.  While he continued to choke Matthews, the CERT Officer forced Matthews's head between his legs which, because he was in full-body mechanical restraints, caused extreme pain to his neck and spine. SAC ¶ 182. Then, a

---

[5]To the extent that Chavez alleges that he was yelled at, threatened, and had property destroyed by Clinton Defendants, SAC ¶¶ 38-41, this does not constitute actionable conduct under the Eighth Amendment.  *See* Text, *infra*.  To the extent that Chavez alleges that he was denied his request to bring his prescription eyeglasses and medical shoes or his boots with him upon being transferred out of Clinton, subjected to a strip-search and body cavity search, placed in mechanical full-body shackles, and ordered to balance himself on the ridges of a hard plastic chair on his knees for approximate 5 to 10 minutes, these actions were taken by CERT Officers and not the Clinton Defendants. *See* SAC ¶¶ 60-65.

CERT Officer who had "what appeared to be handcuffs wrapped around his fists," began repeatedly punching Matthews in the head causing blood to run down his face. SAC ¶ 186-187. The SAC states that "[u]pon information and belief, Defendant Clinton Corrections Officers, including XXX[,] were present during the assault on Plaintiff[] Matthews," SAC ¶ 189, yet failed to intervene to prevent the assault. SAC ¶¶ 190-191. For reasons discussed above with regard to the same allegation in connection with an alleged assault against Smith, the allegation is sufficient to allege personal involvement of all the Clinton Defendants. Accordingly, Matthews's excessive force claim against the Clinton Defendants is allowed to proceed.

### c. Verbal Harassment, Verbal Threats or Verbal Abuse

Defendants move to dismiss any § 1983 claim based on allegations of verbal harassment, verbal threats, and verbal abuse without a correlation to any physical injury. Plaintiffs oppose the motion, arguing that they have sufficiently pled that, under the totality of the circumstances, the "Defendants' handling of the investigation into the Clinton escape" caused Matthews, Gomez, Bonds, Smith, and Chaves to suffer physical and psychological injuries. SAC ¶¶ 252-256. Other than this conclusory allegation, the plaintiffs point only to the allegations surrounding Smith where it is alleged that Smith was subjected to verbal harassment, racial epithets, and threats in connection with physical violence. SAC ¶¶104-105, 112.

It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003). "Verbal harassment or profanity alone, unaccompanied by an injury no matter how

13

inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Burroughs*, 138 F. Supp. 3d at 204 (internal citation and quotation marks omitted); *see Alexander v. Cuomo*, No. 17-CV-309 BKS/CFH, 2018 WL 2041576, at *7 (N.D.N.Y. Feb. 26, 2018)("Allegations of verbal harassment or abuse, without an allegation of an actual injury, are insufficient to support a § 1983 claim.")(citing *Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. 2001) and *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)(*per curiam*)). Similarly, it is well settled that threats alone "do not amount to violations of constitutional rights." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995); *see Merrill v. Schell*, 279 F. Supp. 3d 438, 443 (W.D.N.Y. 2017)("Mere threats or verbal harassment, without any 'appreciable injury,' generally are not actionable under section 1983.")(citing *Purcell*, 790 F. 2d at 265).

The plaintiffs' allegations that they suffered physical or psychological injuries due to "Defendants' handling of the investigation into the Clinton escape" are mere conclusory allegations lacking any plausible connection to any particular defendant's conduct. Any § 1983 claim that "the defendants' conduct" of verbal harassment, verbal threats, and verbal abuse caused a plaintiff to suffer physical or psychological injuries, other than that asserted by Smith, is dismissed as failing to plausibly allege actionable conduct by a defendant causing such injuries. While the plaintiffs will be able to argue that any physical or psychological injuries they suffered were proximately caused by conduct underlying a claim that proceeds to trial, their allegations that the defendants' verbal harassment, verbal threats, and verbal abuse alone is insufficient to support a claim. Thus, to the extent the

SAC alleges §1983 claims based on verbal harassment, verbal threats, or verbal abuse that did not occur in connection with conduct causing physical injury, such claims are dismissed.

### d. Excessive Force Based on Kneeling

Plaintiffs Bonds, Chavez, Matthews, and Gomez assert that CERT officers directed them to balance on their knees for an "extended" period of time, or "for approximately [5-10] minutes," on the edges of benches or on the ridge of a hard plastic chair, causing the plaintiffs extreme pain. *See* SAC ¶¶ 56 (Bonds), 66 (Chaves), 135 (Matthews), 145 (Gomez). The plaintiffs allege that, upon information and belief, the CERT Officers knew that requiring the plaintiffs to balance on their knees on the benches and chair would cause tremendous and extreme pain. SAC ¶¶ 57, 67, 136, 147. Defendants argue that these allegations fail to satisfy the objective and subjective components of an Eighth Amendment excessive force claim.

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992); *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999)). The subjective component "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Id.* (interior quotation marks and citations omitted). When officers use force against a prisoner, they must "apply [it] in a good-faith effort to maintain or restore discipline," to serve a legitimate penological objective, and not to "maliciously and sadistically to cause harm."

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)(quoting *Hudson*, 503 U.S. at 7). To determine whether the defendants wantonly inflicted unnecessary pain on the plaintiffs, the Court considers the degree of force used, injuries to the prisoner, any "threat reasonably perceived by the responsible officials," and "any efforts made by the defendants to temper the severity of a forceful response." *Id.* (citing *Hudson*, 503 U.S. at 6–7; *see Wright*, 554 F.3d at 268 ("When prison officials are accused of using excessive force, the 'wantonness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'")(quoting *Hudson*, 503 U.S. at 7).

> The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of "contemporary standards of decency." *Hudson*, 503 U.S. at 8, 112 S.Ct. 995 (internal quotation marks omitted). In assessing this component, the court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* (quoting [*Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed.2d 271 (1991)]. But when prison officials use force to cause harm maliciously and sadistically, "contemporary standards of decency always are violated.... This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9, 112 S. Ct. 995.

*Wright*, 554 F.3d at 268-69.

The allegations in the SAC, accepted as true for purposes of this motion, are sufficient to plausibly support both the subjective and objective components of Eighth Amendment claims arising from the CERT Officers' directions for the plaintiffs to balance themselves on their knees on hard surfaces. On the subjective component, it is plausible to conclude that the CERT officers, knowing that balancing on their knees on hard services for a lengthy period of time caused the plaintiffs extreme pain, nevertheless required the plaintiffs to do this. Thus, the plaintiffs present plausible allegations to conclude that the defendants required the plaintiffs to kneel for extended periods of time maliciously and

sadistically to cause harm, and not to maintain or restore discipline or to serve a legitimate penological objective.[6]  Once this conclusion is reached, the objective component is satisfied regardless of whether it was evident the plaintiffs suffered significant injury. Accordingly, the Eighth Amendment excessive force claims based on excessive kneeling are allowed to proceed.

### e.  Inadequate Medical Care

The defendants move to dismiss the plaintiffs' inadequate medical care claims. "To establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Estelle*, 429 U.S. at 104). "To plead a claim, a plaintiff must allege plausible facts supportive of such an inference." *Andrew v. Bellevue Hosp.*, No. 13-CV-8531 (KBF), 2016 WL 7009018, at *3 (S.D.N.Y. Nov. 30, 2016). The deliberate indifference standard has both objective and subjective prongs. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).  To state a claim, a plaintiff must first allege "that his medical condition is an objectively serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Then, he must allege facts supportive of an inference "that the defendant acted with deliberate indifference to" that medical condition. *Id.*

The objective prong considers whether the medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).   "The Second Circuit has stated that a medical need is serious if it presents 'a condition of urgency that may result in

---

[6]It may be that the plaintiffs were directed to kneel on the benches and a chair only so long as necessary to allow the CERT Officers to apply leg restraints, and thus the kneeling requirement served a legitimate penological objective. However when accepting the allegations in the SAC as true, and drawing all reasonable inferences in the plaintiffs' favor, this conclusion cannot be reached on this motion.

degeneration or extreme pain.'" *Shabazz v. Howard*, No. 9:12-CV-1372 NAM/TWD, 2015 WL 5604662, at *4 (N.D.N.Y. Sept. 23, 2015), *appeal dismissed* (July 7, 2016)(quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998)). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Id.* (citing *Chance*, 143 F. 3d at 702–03).

> [A]n Eighth Amendment claim may [also] be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm and . . . actual physical injury is not necessary in order to demonstrate an Eighth Amendment violation. *See Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed.2d 22 (1993) (the potential future health risk caused by exposure to second hand smoke may form the basis for relief under the Eighth Amendment); *cf. White v. Napoleon*, 897 F.2d 103, 111 (3rd Cir.1990) (prisoner need not allege that his medical condition worsened in order to state a viable Eighth Amendment claim for denial of medical care). As the Supreme Court recognized in *Helling*, prison officials may not ignore medical conditions that are "very likely to cause serious illness and needless suffering" in the future even if the prisoner has "no serious current symptoms." *Helling*, 509 U.S. at 33, 113 S. Ct. 2475. Yet, although demonstrable adverse medical effects may not be required under the Eighth Amendment, the absence of present physical injury will often be probative in assessing the risk of future harm. *Cf.* [*Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed.2d 156 (1992)] (while serious injury is not required to bring an Eighth Amendment excessive force claim, "[t]he absence of serious injury is ... [still] relevant to the Eighth Amendment inquiry").

*Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003).

The subjective prong requires a plaintiff to demonstrate "that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness." *Shabazz*, 2015 WL 5604662, at *4 (citing *Wilson v. Seiter*, 501 U.S. 294, 301–03 (1991); *Hathaway*,

37 F.3d at 66); *see also Lawrence v. Evans*, 669 F. App'x 27, 28 (2d Cir. 2016) ("To satisfy the subjective component [of an Eighth Amendment medical-treatment claim], a plaintiff must establish the equivalent of criminal recklessness, *i.e.*, 'that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result.'") (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). In this regard, "[a] plaintiff must demonstrate that a defendant acted with reckless disregard to a known risk of substantial harm." *Id.* (citing *Farmer*, 511 U.S. at 836). Thus, to establish deliberate indifference, an inmate must prove that (1) the defendant was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the defendant actually drew that inference. *Id.* (citing *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702). "The inmate then must establish that the [defendant] consciously and intentionally disregarded or ignored that serious medical need." *Id.* (citing *Farmer*, 511 U.S. at 835). "[D]eliberate indifference is more substantial than mere disagreement over a course of treatment, negligence or even medical malpractice." *Santana v. Watson*, No. 13 Civ. 1549(SAS), 2014 WL 1803308, at * 5, 2014 U.S. Dist. LEXIS 62628, at * 24 (S.D.N.Y. May 6, 2014) (dismissing claim on summary judgment where, "[a]t most, the[ ] facts show that [the nurse] knew [plaintiff] had a prescription for a CPAP machine and failed to follow up on his CPAP request in a timely manner," but "[t]here [was] no indication that she deliberately denied access ..., or that she knew that the failure to provide a CPAP machine posed an excessive risk to [plaintiff's] health or safety.").

### 1. Medical Indifference Claims at Sullivan

There are no Sullivan defendants remaining in this action. Accordingly, all medical

indifference claims arising from conduct occurring at Sullivan, SAC ¶¶ 242-256, are dismissed.

### 2. Plaintiff Bonds - Medical Indifference Claim

Bonds asserts that he was choked by CERT Officers with a nightstick, that these officers lifted him off the ground and slammed him back down, kicked him with steel-toed boots while on the ground, pushed him into walls and radiators, and cuffed him so tightly that he thought his wrists were going to break. Regarding his medical indifference claim, he asserts that after arriving at Upstate, the medical staff present during his intake included Defendants Fairchild, Conklin, Kumar, and Kowalchuck. SAC ¶ 97. He asserts that he informed Upstate medical staff present during his intake "of his injuries," SAC ¶ 96, but that he was merely told "to fill out a sick-call request the following day." SAC ¶ 98. He further contends that when he filled out a sick-call request the following day, no one responded. SAC ¶ ¶ 100-101. These allegations fail to plausibly establish the subjective and objective prongs of an inadequate medical treatment claim.

Bonds' conclusory allegation that he informed medical staff "of his injuries" fails to plausibly establish that he suffered from a sufficiently serious condition. He does not assert that he had any visible injuries and he does not describe the injuries that he purportedly reported to medical staff. Furthermore, he fails to present plausible factual allegations that any particular defendant acted with the requisite culpable mental state to support the subjective prong of such a claim. While he contends that the Upstate medical staff failed to respond to his sick-call request, he does not identify who directed him to fill out the sick-call request, who he gave the sick-call request to, or indicate any factual basis upon which to conclude that he suffered from a serious medical condition while he waited at Upstate for

medical officials to respond to the sick-call request.  This claim is dismissed.  Because

Bonds could allege facts making for a plausible claim in this regard, dismissal is without

prejudice to amendment.

### 3.  Plaintiff Smith - Medical Indifference Claims

Smith asserts that he is an asthmatic and experienced difficulty breathing following

CERT Officers pushing him down on his bed, punching him, and kicking him. He contends

that CERT Officers, rather than rendering aid, continued to assault him and dragged him

from his cell pushing him into walls.  He asserts that he was in so much pain that he could

no longer walk, yet CERT officers failed to render aid.  Moreover, he asserts that CERT

Officers told him "if the nurse asks if you need to see the doctor, you tell them no," so out of

fear for his safety he told the medical staff at Upstate that he did not need medical attention.

SAC ¶ ¶ 221-213.

Although Smith asserts that following the CERT Officers' assaults he was in so much

pain he could not walk, he does not assert that he was unable to walk when he spoke to

Upstate medical staff or that had any visible or apparent injuries requiring immediate

medical attention.  Furthermore, even if he was having difficulty walking at the time, his

statement to the Upstate medical staff that he did not need medical attention defeats any

claim that he was suffering from a serious medical condition or illness that the Upstate

medical staff should have addressed.  Without allegations that Smith was suffering from

visible or apparent injuries when he spoke to Upstate medical staff, and based on his

statement to the staff that he did not need medical attention, he fails to establish a plausible

medical difference claim against any Upstate medical staff.  Thus, any medical indifference

claim against Upstate medical staff based upon the failure to treat Smith is dismissed.

Because Smith could allege facts making for a plausible claim in this regard, dismissal is without prejudice to amendment.

With regard to what appears to be a medical indifference claim against the CERT Officers for their failure to render medical aid during the alleged assault, and because they told Smith not to report his injuries to upstate Medical staff, the claim will be allowed to proceed. While the SAC barely presents plausible factual allegations that would support both the subjective and objective prongs, accepting the allegations as true and drawing reasonable inferences in Smith's favor, the SAC plausibly alleges that the CERT Officers were deliberately indifferent to a serious medical need that required immediate attention and that, by refusing to provide such attention and directing Smith not to report his injuries to medical staff, Smith needlessly suffered from his injures. This claim is allowed to proceed.

### 4. Plaintiff Matthews - Medical Indifference Claims

#### A. Denial of MRI for 8 Months

Matthews claims that he was denied an MRI for eight months for his injuries suffered from his assault by CERT Officers. However, this concerns a medical decision made at Sullivan. SAC ¶¶ 240, 249-251. Because there are no Sullivan Defendants remaining in this action, this claim is dismissed.

#### B. Denial of Diabetes Medication

Matthews also asserts that he is a type II diabetic and requested his diabetes medication 24 hours after arriving at Upstate but was not given this medication the entire time he was there. SAC ¶¶ 220-222. Matthews was at Upstate from June 16, 2015 to June

28, 2015.  SAC ¶¶ 127, 240.  "Where a claim concerns the temporary delay or interruption in the provision of medical treatment—as is the case here—then 'the focus shifts to the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the prisoner's underlying medical condition in the abstract.' " *Ferguson v. Cai*, No. 11 CIV. 6181 PAE, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012)(quoting *Edmonds v. Central N.Y. Psychiatric Ctr.*, No. 10–cv–5810, 2011 WL 3809913, at *4 (S.D.N.Y. Aug.25, 2011) and citing *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (*per curiam*) ("[a]cknowledging decisions by courts that have found Eighth Amendment violations when delays in medical treatment have involved 'life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems'")).  "The Second Circuit has held that a short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where 'the alleged lapses in treatment are minor.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)).  "Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness." *Id.* (citations omitted).

Matthews does not assert that the delay in providing him with his diabetes medication involved a life-threatening situation, exacerbated his diabetes, caused him prolonged pain or discomfort, or that the delay was likely to cause serious illness and needless suffering in the future.  Further, Matthews does not indicate which defendant he requested his diabetes medication from or that any defendant acted with a culpable state of mind in denying the

23

medication.  This claim is dismissed.  Because Matthews could allege facts making for a plausible claim in this regard, dismissal is without prejudice to amendment.

### C.  OSI Officer Facto and NYSP Officer Fish

Matthews also asserts that OSI Officer Facto and NYSP Officer Fish Interviewed him at Upstate about his knowledge of the escapes and that during the interview they noticed the physical injuries that Matthew sustained, inquired about them, but ultimately did nothing to help. SAC ¶ 228.  However, because neither OSI Officer Facto nor NYSP Officer Fish are named as defendants in the SAC, any medical indifference claim against them is dismissed.

### 5.  Plaintiff Gomez - Medical Indifference Claim

Gomez asserts that he suffers from scoliosis and "was denied his medication for five days at Upstate and went through withdrawal." SAC ¶ 223.   Although he contends that he went through withdrawal, Gomez does not allege facts plausibly establishing that the denial of his medication for five days caused extreme pain or exacerbated a serious illness. Furthermore, even assuming that going through withdrawal constitutes needless suffering such to satisfy the objective prong, Gomez fails to indicate who he believes denied him his medication or provide facts plausibly indicating that this person acted with the requisite culpable state of mind.  This claim is dismissed.  Because Gomez could allege facts making for a plausible claim in this regard, dismissal is without prejudice to amendment.

### 6.  Plaintiff Negron - Medical Indifference Claims

Negron asserts that he suffers from arthritis, asthma, and cervical and spinal stenosis. SAC ¶ 224.   He asserts that he was denied his inhaler and aspirin for 5 days, and was denied his arthritis medication for the entirety of his incarceration at Upstate.  SAC ¶

24

224.  Negron was at Upstate from June 16, 2015 to June 29, 2015. SAC ¶¶ 150, 241.

## A. Denial of Inhaler and Aspirin

Negron's medical indifference claim based upon the denial of his inhaler and/or aspirin for five days is insufficient.  He fails to allege facts plausibly establishing that he requested or had a need for the inhaler and/or aspirin during the five days alleged.  Further, he fails to allege facts plausibly supporting the inference that the denial of the inhaler and/or aspirin for this five-day period involved a life-threatening situation, exacerbated his medical conditions, caused him prolonged pain or discomfort, or that the denial of these items was likely to cause serious illness and needless suffering in the future.  Negron also does not indicate which defendant denied him his inhaler and aspirin, and he does not assert facts plausibly indicating that any defendant acted with a culpable state of mind in denying the inhaler and aspirin for 5 days.  This claim is dismissed.  Because Negron could allege facts making for a plausible claim in this regard, dismissal is without prejudice to amendment.

## B. Denial of Arthritis Medication

As to Negron's claim that he was denied his arthritis medication for the approximately 13 days he was incarcerated at Upstate, he fails to allege facts plausibly establishing that he requested this medication or had a prescription requiring its regular administration. Further, he fails to allege that the denial of this medication for this period of time caused him to suffer extreme pain, an exacerbation of a serious illness, or that he will suffer any future negative health ramifications by not taking this medication for this period of time.  Moreover, Negron does not indicate which defendant denied him his arthritis medication, and he does not assert facts plausibly indicating that any defendant acted with a culpable state of mind

in denying the arthritis medication for the approximately 13 days that Negron was at Upstate. This claim is dismissed. Because Negron could allege facts making for a plausible claim in this regard, dismissal is without prejudice to amendment.

### f. Eighth Amendment Conditions of Confinement Claim

The defendants move to dismiss any Eighth Amendment conditions of confinement claim asserted in the SAC. "[A]s part of the Eighth Amendment prohibition on 'cruel and unusual punishments,' inmates have the right to conditions of confinement generally that do not 'involve the wanton and unnecessary infliction of pain.'" *Bryant v. Capra*, No. 18-CV-10198 (KMK), 2020 WL 508843, at *11 (S.D.N.Y. Jan. 31, 2020)(quoting U.S. Const. amend. VIII and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "However, inmates do not have a right to 'comfortable' prison conditions." *Id.* (quoting *Rhodes*, 452 U.S. at 349). "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind ..., such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)(internal quotation marks and citations omitted).

> To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health. *Rhodes*, 452 U.S. at 347, 101 S. Ct. 2392; *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (*per curiam*). Thus, prison officials violate the Constitution when they deprive an inmate of his "basic human needs" such as food, clothing, medical care, and safe and sanitary living conditions. *Id.* (citation and internal quotation marks omitted). "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citation and internal

quotation marks omitted). Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 115 L. Ed.2d 271 (1991) (noting that "low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation).

To meet the subjective element, the plaintiff must show that the defendant acted with "more than mere negligence." [*Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994)]. To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Jabbar*, 683 F.3d at 57. Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk. *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).

*Id.*

Plaintiffs allege that "[a]pproximately 65 incarcerated people, including Plaintiffs, were kept in solitary confinement at Upstate for an extended period of time, where they were not given a change of clothing, access to showers, and other basic human needs." SAC ¶ 21. The plaintiffs were each held in solitary confinement in the Upstate Special Housing Unit ("SHU") for between seven (7) and thirteen (13) days, SAC ¶¶ 232-237. They argue that while in SHU, they were deprived of basic human needs including medical treatment, a change of clothing, and showers. Pl. Mem. L., at 14-15. Plaintiffs Bonds, Matthews, Gomez, Smith, and Negron also assert that they saw papers stuck to their cell doors in the Upstate SHU that said, in substance, "Clinton Guys. Do Not Talk To." SAC ¶¶ 99, 218.

While the plaintiffs allege that "[u]pon information belief, the Defendant CERT Officers and/or Defendant Clinton Corrections Officials ordered that Plaintiffs be detained in SHU housing at Upstate," SAC ¶ 231, they fail to provide plausible factual allegations

27

indicating that any defendant controlled the conditions of their SHU confinements once placed there. The only Upstate defendants remaining in this case are the Upstate medical staff, and the SAC contains no allegation that these defendants controlled the conditions of the plaintiffs' SHU confinements. Thus, even assuming that the plaintiffs' allegations of the deprivations of a change of clothing, showers, medical attention, and, for five of the plaintiffs, the ability to communicate with Correction Officers while in SHU, plausibly establishes the subjective element of an Eighth Amendment conditions of confinement claim, the plaintiffs fail to assert facts plausibly establishing the personal involvement of any defendant in the conduct underlying such a claim. Further, the plaintiffs fail to assert facts plausibly supporting the subjective element of these claims. Absent factual allegations plausibly establishing that a defendant controlled the conditions of the plaintiffs' SHU confinement, and that such a defendant knew of, and disregarded, an excessive risk to the plaintiffs' health or safety, the plaintiffs are left merely with a claim that they were placed in SHU for relatively short periods. Placement in SHU by itself for these short periods does not constitute a sufficiently serious deprivation of the minimal civilized measure of life's necessities. Accordingly, any conditions of confinement claim asserted in the SAC is dismissed. Because the plaintiffs could allege facts making for plausible claims in this regard, dismissal is without prejudice to amendment.

### g.  Procedural Due Process Claims

#### 1.  SHU Confinement

The defendants also move to dismiss the plaintiffs' Fourteenth Amendment procedural due process claims arising from their confinements in SHU at Upstate. While SHU confinement under conditions similar to that which the plaintiffs experienced could be

deemed an atypical and significant hardship giving rise to a protected liberty interest, *see Martinaj v. Uhler*, No. 9:18-CV-00257 (BKS/DJS), 2019 WL 652251, at *10 (N.D.N.Y. Feb. 15, 2019), the plaintiffs have not asserted plausible factual allegations establishing any defendant's personal involvement in the imposition of these conditions while the plaintiffs were in SHU confinement at Upstate. Furthermore, while there is a state-created liberty interest in remaining free from SHU confinement, the plaintiffs have not alleged that they "were denied the opportunity to be interviewed by a designated official either before or during their confinement in SHU at Upstate" as required by N.Y. Comp. Codes R. & Regs. tit. 7, § 301.7(a). *See id.*, at *11. For these reasons, the plaintiffs' procedural due process claims are dismissed. Because the plaintiffs could allege facts making for plausible claims in this regard, dismissal is without prejudice to amendment.

### 2. Property Deprivation

Defendants also move to dismiss the plaintiffs' due process claims based upon an alleged deprivation of personal property. The defendants argue that such claims are not actionable in federal court under §1983 because the plaintiffs have access to sufficient post-deprivation remedies under New York State law. *See Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir. 1988) ("the mere deprivation of personal property would not rise to the level of a constitutional injury"); *Burroughs v. Petrone*, 138 F. Supp.3d 182, 218 (N.D.N.Y. 2015)(the deprivation of an inmate's personal property cannot form the basis of a constitutional claim under § 1983 if there exist sufficient post-deprivation remedies); *see also Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) ("New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action"). The plaintiffs have not responded to this argument and therefore are deemed to have

abandoned their property deprivation claims.  For this reason, and for the reasons cited by the defendants, the plaintiff's property damage claims are dismissed.

### h.  Substantive Due Process Claims

The defendants also argue that to the extent the plaintiffs assert Fourteenth Amendment substantive due process claims, all of the factual allegations underlying the claims are contemplated within their other Fourteenth Amendment and/or Eighth Amendment claims.  *See* SAC ¶ 259.  Thus, the defendants contend that the substantive due process claims should be dismissed as they are improperly duplicative of the other claims.  *See Conn v. Gabbert*, 526 U.S. 286, 293 (1999)("Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.")(citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)(internal quotation marks omitted)).  The plaintiffs have not responded to this argument and thus are deemed to have abandoned the substantive due process claims.  For this reason, and for the reasons cited by the defendants, the substantive due process claims are dismissed.

### i.  Equal Protection Claims

The defendants move to dismiss the Fourteenth Amendment equal protection claims. The Equal Protection Clause of the Fourteenth Amendment mandates that similarly situated persons be treated alike.  *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  "If a prisoner claims he received different treatment by prison officials because of a protected characteristic, he must 'demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination' and that such treatment 'was not reasonably related to any legitimate penological interests.'" *Barry v.*

*LaManna*, No. 19 CV 4189 (VB), 2019 WL 6790515, at *4 (S.D.N.Y. Dec. 12, 2019)(quoting

*Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)); *see Giano v. Senkowski*, 54 F.3d

1050, 1057 (2d Cir. 1995)("To establish an equal protection cause of action, a plaintiff must

prove that he was treated differently than others similarly situated as a result of intentional

or purposeful discrimination directed at an identifiable or suspect class."); *M.O.C.H.A. Soc.,*

*Inc. v. City of Buffalo*, 872 F. Supp. 2d 264, 291 (W.D.N.Y. 2012)("To prevail on an equal

protection claim, a plaintiff must show that (1) he was treated differently from other

similarly-situated individuals, and (2) the differential treatment was based on 'impermissible

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional

rights, or malicious or bad faith intent to injure a person.'")(quoting *Harlen Assocs. v.*

*Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation marks

and citations omitted)).   "To be similarly situated, the individuals with whom [the plaintiff]

attempts to compare [himself] must be similarly situated in all material respects." *Shumway*

*v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997).   "In other words, the plaintiff

must establish 'a reasonably close resemblance of the facts and circumstances of plaintiff's

and comparator's cases, rather than a showing that both cases are identical.'" *Giaccio v.*

*City of New York*, 502 F. Supp. 2d 380, 387–88 (S.D.N.Y. 2007), *aff'd*, 308 F. App'x 470 (2d

Cir. 2009)(quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).   To state a

race-based claim under the Equal Protection Clause, as the plaintiffs assert here, "a plaintiff

must allege that a government actor intentionally discriminated against him on the basis of

his race." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).

### 1.  Treated Differently than Similarly-Situated Individuals

The SAC indicates that after Matt and Sweat escaped from Clinton, the plaintiffs and

many other inmates were subjected to similar treatment in the course of the investigation into the escapes. *See* SAC ¶ 18 ("Plaintiffs *and scores of other people incarcerated at Clinton* were terrorized by Clinton Corrections Officers, NYSP Officers, OSI Officials, and CERT Officers, including CERT Officer 44-23,  44-5, 44-4, and 44-3.  Clinton was placed on lockdown *and all incarcerated people were confined to their cells*.")(emphases added); SAC ¶ 19 ("Over the course of the next ten days, *several people incarcerated at Clinton*, including Plaintiff Gomez, *were interrogated* about the escape and the whereabouts of Matt and Sweat. This interrogation included physical[] *assaults*, as well as threats to link the *interrogees* to the escape if they did not provide useful information.")(emphases added); SAC ¶ 20 ("Approximately ten days after the escape, CERT Officers *began transferring people incarcerated at Clinton* to Upstate . . . .  During the transfer, CERT Officers . . . used unlawful and unjustified physical  force *on several incarcerated people*, including Plaintiffs, and used the most  abhorrent racist and religious epithets.")(emphases added); SAC ¶ 21 ("*Approximately 65 incarcerated people*, including Plaintiffs, were kept in solitary confinement at Upstate for an extended period of time, where they were not given a change of clothing, access to showers, and other basic human needs.")(emphasis added).  From these allegations, it appears that the plaintiffs were treated *like* the other inmates in most respects.  Further, the SAC describes in detail the particular treatment each plaintiff was subjected to, but throughout this lengthy recitation the SAC does not specifically allege any plaintiff was treated differently from other similarly-situated individuals not in his identifiable class.[7]  *See* SAC ¶¶ 26-256.  Nevertheless, the SAC asserts that "[u]pon information and

---

[7]Each of the plaintiffs are either African-American or Latino. SAC ¶¶ 7-12.

belief, Defendant CERT Officers and Defendant Clinton Corrections Officers did not yell racial slurs or use unlawful force against incarcerated people at Clinton who are Caucasian." SAC ¶ 219. While this is broad conclusory allegation that may not ultimately be supported,[8] it allows for a weak inference that the plaintiffs were treated differently than similarly situated inmates not in plaintiffs' suspect classes. At this stage of the proceedings, this is sufficient on this prong of the equal protection claims.

## 2. Intentional Discrimination

However, the SAC provides little in the way of factual allegations plausibly establishing that any particular defendant intentionally discriminated against any particular plaintiff based on that plaintiff's membership in a particular class. The allegation at SAC ¶ 219 does not tie any specific conduct by any defendant to any race-based animus or discriminatory intent. And the SAC's recitation of the plaintiffs' treatment also does not contain an allegation that any specific defendant's conduct was motivated by racial animus, or was intended to discriminate on that basis. *See* SAC ¶¶ 26-256. While the SAC asserts that "[t]he acts and conduct of Defendants . . . complained of herein were motivated by racial animus, and were intended to discriminate on the basis of race," SAC ¶ 264, this allegation is in the Second Cause of Action, Plaintiff Smith's Title VI claim, and appears to be directed to that claim - not the claims in the Second Cause of Action (which includes the equal protection claims). Moreover, even applying this allegation to all the conduct alleged in the SAC, it is merely a broad and conclusory allegation that, by itself, fails to provide a

---

[8]It is possible that the Caucasians incarcerated at Clinton were not similarly situated to the plaintiffs with regard to the defendants' focus on particular inmates who might have information about Matt and Sweat's escapes. Further, it is possible that CERT Officers and Defendant Clinton Corrections Officers did not use unlawful force against incarcerated people at Clinton who are Caucasian. But these are issues that cannot be resoled on this motion.

plausible factual basis to conclude that any defendant's specific conduct was motivated by racial animus or was intended to discriminate on that basis.

The plaintiffs are correct that racially motivated comments can give rise to an inference of discriminatory intent, and, if made in the context of a violation of an established right, can support an equal protection claim. Pl. Mem. L., at 18 (citing *Stone*, 2018 WL 557872, at *7). However, the SAC indicates that the only plaintiff who was subjected to racially motivated comments during the course of an alleged violation of an established right was Smith. *See* SAC ¶¶ 104-112.[9] These factual allegations, accepted as true for purposes of this motion, and when combined with the allegations at SAC ¶¶ 219 & 264, are sufficient to state a plausible equal protection claim by Smith against the CERT officers who made these comments. But the comments directed to Smith are insufficient to support a plausible equal protection claim by any other plaintiff. Simply stated, other than for Smith, the SAC fails to present factual allegations plausibly establishing that any defendant intentionally or purposefully discriminated against any plaintiff on the basis that plaintiff's race. Accordingly, all equal protection claims other than Smith's claims against the CERT Officers who made racially derogatory statements to him in the context of a violation of an established right are dismissed. While it appears unlikely that the other plaintiffs could plead facts supporting plausible equal protection claims, these other equal protection claims are dismissed without prejudice to amendment.

### j. Plaintiff Smith's Title VI Claim

---

[9]The SAC asserts that Defendant CERT Officers said to Smith while investigating the prison escapes and assaulting him: "Shut the fuck up nigger and put your hands behind your back;" "Nigger, if you look at any of us you won't live to regret it;" and, while grabbing Smith by the testicles, "If you don't listen to us or if you look at us you will never be able to make any nigger babies. Understand?"

The Defendants argue that the Court should dismiss Smith's claim against DOCCS under Title VI of the Civil Rights Act of 1964 ("Title VI") because his allegations fail to meet the standard for such a claim.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Thus, "'Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin.'" *Stone*, 2018 WL 557872, at *14 (quoting *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012)). "'[T]his includes prohibition of intentional discrimination.'" *Id.* (quoting *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014), in turning citing *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001)).

"To state a claim for a violation of Title VI, a plaintiff must show, through specific factual allegations that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendants' action." *Joseph v. Metropolitan Museum of Art*, 2016 U.S. Dist. LEXIS 77961, *7 (S.D.N.Y. June 15, 2016)(citations omitted).  "In order to establish intentional discrimination, Plaintiff 'must show that the decision maker selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group.'" *Id.* (quoting *Soberal-Perez v. Heckler*, 717 F.2d 36, 42 (2d Cir. 1983) (internal quotation marks, citation, and alterations omitted)).  A plaintiff may also establish that the federal funds recipient was deliberately indifferent to the discriminatory acts of a third party.  *See Stone*, 2018 WL 557872, at *14.  Where the facts establish that a third-party other than DOCCS (the federal funds recipient) engaged in

35

racially discriminatory conduct, the plaintiff can establish DOCCS' deliberate indifference to this third-party conduct "by providing evidence that shows a failure to respond, a response that only follows after a lengthy and unjustified delay, or a response that is clearly unreasonable in light of the known circumstances." *Id.* (internal quotation marks and citations omitted).

Here, although there is no allegation that Smith or anyone else complained to DOCCS officials about the racially discriminatory nature of the investigation into the Matt and Sweat escapes from Clinton, the SAC asserts that "[u]pon information and belief, Governor Cuomo, as well as Acting DOCCS Commissioner Anthony Annucci, DOCCS Deputy Commissioner Joseph Bellnier, and former Clinton Correctional Facility Superintendent Steven Racette, approved and encouraged the interrogation methods Clinton Corrections Officers, OSI investigators, Correctional Emergency Response Team ("CERT") Officers, and NYSP Officers used." SAC ¶ 27. Accepting this allegation as true leads to the reasonable inference that high-ranking DOCCS officials were closely monitoring the investigation. Further, when accepting the truth of the allegation that "Defendant CERT Officers and Defendant Clinton Corrections Officers did not yell racial slurs or use unlawful force against incarcerated people at Clinton who are Caucasian," SAC ¶ 219, it is plausible to infer that high-ranking DOCCS officials were aware of racially discriminatory conduct by DOCCS investigators but failed to respond to it, thereby demonstrating deliberate indifference to the conduct. Although this is an exceedingly weak inference, the Court's duty at this stage of the proceedings is merely to determine whether there are sufficient allegations to allow a claim to proceed. For these reasons, Plaintiff Smith's Title VI claim will be allowed to proceed.

## V.    CONCLUSION

For the reasons stated above, the defendants' motion to dismiss certain claims

asserted in the Second Amended Complaint, Dkt. No. 172, is **GRANTED in part** and

**DENIED in part**.

The motion is granted in that the following claims are dismissed without prejudice to

amendment:

-Plaintiff Bonds's medical indifference claim against Upstate Correctional Facility medical personnel;

-Plaintiff Smith's medical indifference claim against Upstate Correctional Facility medical personnel;

-Plaintiff Matthews's medical indifference claim against Upstate Correctional Facility medical personnel;

-Plaintiff Gomez's medical indifference claim against Upstate Correctional Facility personnel;

-Plaintiff Negron's medical indifference claim against Upstate Correctional Facility medical personnel;

-Plaintiffs' §1983 conditions of confinement claims;

-Plaintiffs' procedural due process claims arising from their confinement in SHU at Upstate Correctional Facility;

- All equal protection claims other than Plaintiff Smith's claims against the CERT Officers who made racially derogatory statements to him in the context of a violation of an established right.

The following claims are dismissed with prejudice:

- Any § 1983 claim against DOCCS;

- Any §1983 excessive force claim by Plaintiff Chaves against the Clinton Defendants and Defendant Skiff;

- Any §1983 claims based on verbal harassment, verbal threats, or verbal abuse that did not occur in connection with conduct causing physical injury;

- All medical indifference claims arising from conduct occurring at Sullivan Correctional Facility;

- Any medical indifference claim against OSI Officer Facto and NYSP Officer Fish;

- Plaintiffs' procedural due process claims arising from the deprivation of personal property;

-Plaintiffs' substantive due process claims.

The motion is denied in all other respects.

If plaintiffs seek to amend the SAC without the defendants' written consent, application for same must be made within thirty (30) days of this Decision and Order. *See* Fed. R. Civ. P. 15(a)(2).

Because all medical indifference claims against Upstate medical staff have been dismissed, the following defendants may be terminated from this action: Christy Conklin, Dr. Kumar, Mary Kowalchuck, Cherie Fairchild, and Matthew Ranger.

**IT IS SO ORDERED.**

Dated:  March 3, 2020

Thomas J. McAvoy
Senior, U.S. District Judge