**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LUKE MATTHEWS, CARLOS GOMEZ,**
**GENTL BONDS, ROBERT SMITH,**
**ROBERT NEGRON, and KASIEM CHAVES,**

                                **Plaintiffs,**

    v.                                    **9:17-CV-503**
                                            **(TJM/ML)**

**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS AND COMMUNITY**
**SUPERVISION,** *et al.*,

                                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION and ORDER**

**I.    INTRODUCTION**

Defendants move for partial summary judgment seeking to dismiss Plaintiffs Gomez, Bonds, Smith, and Negron's claims, and that much of Plaintiff Matthews' claims brought against 31 Clinton security staff defendants and Office of Special Investigations (OSI) officer Skiff, for failure to exhaust administrative remedies. Dkt. 254. Plaintiffs oppose the motion, Dkt. 281 (sealed), 283 (redacted), and Defendants reply. Dkt. 286. For the reasons that follow, Defendants' motion is granted in part and denied in part.

**II.    BACKGROUND**

The Court presumes familiarity with the procedural history of this case. The surviving claims in this action arise from incidents that allegedly occurred at Clinton

1

Correctional Facility ("Clinton") after David Sweat and Richard Matt's escape from Clinton in June 2015. *See* Dkt. 167, Second Amended Complaint ("SAC"). The six (6) plaintiffs, who were at relevant times incarcerated individuals ("inmates") in DOCCS custody, allege violations of the Eighth Amendment pursuant to 42 U.S.C. § 1983. Plaintiff Smith also asserts a claim under Title VI of the Civil Rights Act of 1964.

Each of the plaintiffs was transferred from Clinton to Upstate Correctional Facility ("Upstate") on either June 15, 2015 or June 16, 2015, and each of them remained temporarily at Upstate, for a period of between 7 and 13 days. Pl. Response to Defs. L.R. 56.1 Stat. ("Pl. Rule 56.1 Resp."), Dkt. 284, ¶ 2. Thereafter, the plaintiffs were transferred to Sullivan Correctional Facility ("Sullivan"). *See generally, id.*

While confined at Upstate, Matthews submitted a harassment grievance regarding his transfer from Clinton to Upstate that was assigned the grievance number "UST-56316-15" and contained the language, "Assaulted by CERT[1] at Clinton." *Id.* ¶ 3.[2] Plaintiffs admit that in the foregoing grievance, Matthews made no mention of any Clinton security staff (*e.g.* corrections officers, sergeants, or lieutenants) being present during the alleged acts of force by CERT officers occurred, nor did he provide any names or identifying information for any Clinton security staff. *Id.* ¶ 4. Matthews completed the final level of administrative review with respect to this grievance insofar as he appealed this grievance to DOCCS Central Office Review Committee ("CORC"). *See* Wilcox Decl. ¶¶

---

[1]A team of DOCCS CERT (Correction Emergency Response Team) officers from Eastern Correctional Facility was assigned to transport certain incarcerated individuals, including plaintiffs, from Clinton to Upstate on June 15 and June 16, 2015. *See* Bradford Decl. at ¶¶ 7-9.

[2]The portion of the record upon which Defendants relying in citing this fact does not contain Matthews' actual grievance. *See* Wilcox Decl. Exh. A; Seguin Exh. A.

2

14-16, Exh. A; Seguin Decl. ¶¶ 15(a), 17, Exh. A.

At Sullivan, Matthews filed two grievances ostensibly related to his claims in this action that he was assaulted by CERT officers at Clinton on June 16, 2015:

SUL-21870-15, "To Be Given Care For Injuries" (at Clinton CF, Upstate CF, and Sullivan CF), submitted on July 9, 2015; and

SUL-21909-15, "Assault by CERT," submitted on July 9, 2015.

Proscia Decl. ¶ 16.

In SUL-21870-15, Matthews filed a grievance on June 24, 2015 in which he states he was extracted from his cell and assaulted by CERT officers at Clinton Correctional Facility on June 16, 2015 during which he accrued injuries to his back, neck, right arm, and face. *See* Proscia Decl. Ex. B at CM/ECF p. 20.  In SUL-21909-15, Matthews filed a grievance on June 25, 2015 in which he asserts that he was "viciously assaulted by CERT members in the hallway of Clinton C.F. and on the bus" where he accrued injuries to his back, neck and right arm. *Id.* at CM/ECF p. 25.  SUL-21870-15 was denied by the Superintendent on September 2, 2015. *Id.* ¶ 17.  SUL-21909-15 was denied by the Superintendent on July 31, 2015. *Id.* ¶ 18.  Neither of the Superintendent's decisions on these two grievances (SUL-21870-15 and SUL-21909-15) was appealed to CORC. *Id.* ¶ 19.

Gomez did not file a grievance regarding his surviving claims in the SAC at Clinton or Upstate. Pl. Rule 56.1 Resp. ¶ 6.  He also did not file a grievance regarding the claims he asserts in the SAC while housed at Sullivan from approximately June 23, 2015 until

approximately March 29, 2016. *Id*. ¶ 7.³  Nor did Gomez file a grievance appeal to CORC regarding the claims he asserts in the SAC. *Id*. ¶ 8.

On June 30, 2015, when confined at Sullivan, Bonds wrote a grievance complaining, *inter alia*, that he was assaulted by CERT officers on June 15, 2015 while being extracted from his cell at Clinton and while being transported to Upstate. *See* Pinsonnault Decl., Exh. C at Bates No. 001660; Pl. Rule 56.1 Resp. ¶ 11; SAC ¶¶ 52-59, 71-91. Notwithstanding the applicable grievance procedures (Directive 4040), Bonds forwarded this grievance to the Superintendent at Clinton (Supt. Kirkpatrick), who forwarded it to Christine Gregory—the IGP supervisor at Clinton. On July 14, 2015, Gregory sent Bonds a letter returning this grievance and advising him that the directive requires it be filed at the facility where the inmate is confined. Plaintiff filed the grievance at Sullivan on August 3, 2015. Proscia Decl. ¶ 25. This is the only grievance Bonds filed while confined at Sullivan. *Id.* at ¶¶ 24-25, 28. This grievance (SUL21977-15, "Assault") was passed through to the Superintendent because it complained of harassment by staff. *Id.* at ¶ 25. Bonds asserts that he was informed in a memo from the Superintendent dated July 13, 2015 that his grievance had been received and was being processed. *See* Bonds Decl., Dkt. No. 281-16, ¶ 9. He also asserts that "[i]n September of 2015, [he] was interviewed by a Sergeant Corrections Officer about the complaints [he] had made in [his] June 30, 2015 grievance." *Id*. ¶ 10. He contends, however, that after that interview he did

---

³On December 2, 2015, at Sullivan, Gomez utilized the grievance program to file two grievances unrelated to his claims in this action:

1. SUL-22323-15, "Rx Order Rescinded"; and
2. SUL-23324-15, "Lost Property Claim."

Proscia Decl. ¶¶ 4-11, 21-23.

not receive any further information regarding that grievance. *Id*. ¶ 10. The Superintendent denied the grievance on September 4, 2015. Proscia Decl. at ¶ 26. Bonds points to evidence indicating that his grievance was not investigated by DOCCS supervisory security staff and not adjudged to be without merit until September 5, 2015. *See* Proscia Decl., Dkt. 254-6, Ex. B, Memorandum of Sgt. W. Beach dated September 5, 2015. Bonds did not appeal the Superintendent's decision to CORC. Pl. Rule 56.1 Resp. ¶ 13. Nor did Bonds not file a grievance appeal to CORC regarding the claims he asserts in the SAC. *Id.* ¶ 14. However, Bonds contends that he never received a decision from DOCCS regarding his grievance. *See* Bonds Decl. ¶ 12.

Smith did not file a grievance related to his claims in the SAC at Clinton, Upstate, or Sullivan. *Id.* ¶ 16. Nor did Smith file a grievance appeal to CORC regarding the claims he asserts in the SAC. *Id*. ¶ 17.

Negron asserts that, on June 16, 2015, CERT Officers entered his cell at Clinton, assaulted him (including striking him), and removed him from his cell. SAC ¶¶ 150-152, 154, 156, 158. Negron also alleges that some defendant Clinton Correction Officers, "including Defendants Gonyo, Devlin, Terry, Russell, Baxter, Wood, Reif, Drake, Besaw, and Brooks" were present for this incident but failed to intervene. SAC ¶¶ 162-164. Negron did not file a grievance about his foregoing allegations at Clinton or at Upstate. Pl. Rule 56.1 Resp. ¶ 19. Negron did not file a grievance regarding his surviving claims in this action while housed at Sullivan. *Id.* ¶ 20.[4] Nor did Negron file a grievance appeal to

---

[4]At Sullivan, Negron filed three grievances unrelated to his claims in this action:

1. SUL-22366-15, "Cold Cuts Opened and Some Slices Missing," filed Dec. 18, 2015;
2. SUL-22428-16, "Wall Jack Volume Goes Unpredictably High," filed Jan. 14, 2016; and

(continued...)

5

CORC regarding his surviving claims in this action. *Id.* ¶ 21.

## III. DISCUSSION

As indicated, Defendants seek summary judgment dismissing Plaintiffs Gomez, Bonds, Smith, and Negron's claims, and that much of Plaintiff Matthews' claim as brought against 31 Clinton security staff defendants and OSI officer Skiff, for failure to exhaust administrative remedies. Plaintiffs contend that exhaustion of administrative remedies is not required because the Inmate Grievance Procedure offered by DOCCS "operates as a dead end for Plaintiffs making allegations of assault against corrections officers because prison authorities are consistently unwilling to provide relief for such claims." Plaintiffs also contend that "Plaintiff Gentl Bonds is additionally excused from exhausting administrative relief because the Inmate Grievance Procedure with regard to him was a dead end for additional reasons and was also so opaque as to be unusable." Further, Plaintiffs contend that Matthews "is not required to exhaust administrative remedies for all Defendants."

### a. Inmate Grievances - Adminstrative Exhaustion

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011)

---

[4](...continued)
  3. SUL-22540-16, "Hooded Sweatshirts, Medical," filed March 17, 2016.

Proscia Decl. ¶ 32; see id. at ¶¶ 4-11, 31, 33-34.

(citations omitted). To exhaust administrative remedies, a prisoner "must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012). "The PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (internal cites and quotes omitted)

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones*, 549 U.S. at 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

As Defendants point out, DOCCS has a well-established inmate grievance program ("IGP") that has long been recognized as an available remedy for purposes of the PLRA. *See* N.Y. Comp. Codes R. & Regs. (N.Y.C.R.R.) tit. 7, § 701.5 (2018); *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004). As a general matter, the IGP consists of a three-step grievance and appeal procedure. *See* 7 N.Y.C.R.R. § 701.5 *et seq*. First, an inmate must file a written grievance with the IGP clerk at their correctional facility within twenty-one (21) calendar days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a). The IGP clerk then forwards the grievance to the Inmate Grievance Resolution Committee ("IGRC"), which has "up to sixteen (16) calendar days after a grievance is filed to resolve it informally." *Id*. §

701.5(b)(1).  If there is no informal resolution, the IGRC conducts a hearing "within sixteen (16) calendar days after receipt of the grievance" and thereafter issues a written recommendation within two (2) working days. Id. § 701.5(b)(2)(ii), (b)(3)(i).  Second, if an inmate is dissatisfied with the IGRC's decision, he or she may appeal to the facility superintendent. 7 N.Y.C.R.R. § 701.5(c).  At the third and final step of the IGP, an inmate must appeal an adverse superintendent's decision to the Central Office Review Committee ("CORC") within seven (7) calendar days after receipt of the decision. *Id*. § 701.5(d)(1)(i).

Grievances claiming employee harassment "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure. 7 N.Y.C.R.R. § 701.8. The IGP defines harassment as "employee misconduct meant to annoy, intimidate, or harm an inmate." *Id.* at § 701.2(e).  The IGP framework for harassment grievances requires that "[a]ll documents submitted with [a grievance alleging harassment] must be forwarded to the superintendent by close of business that day," *id.* § 101.8(b), and that the superintendent personally or through a designee "shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in [§] 707.2." *Id*. § 701.8(c).  If it is not, the grievance is returned to the Inmate Grievance Resolution Committee ("IGRC") for normal processing. *Id.* § 701.8(c).

When a grievance presents a bona fide harassment issue, the superintendent must (1) initiate an in-house investigation into the allegations by higher-ranking supervisory personnel, (2) request an investigation by the inspector general's office, or (3) if the superintendent determines that criminal activity may be involved, request an investigation

by the New York State Police, Bureau of Criminal Investigation. *Id.* § 701.8(d). The superintendent then must address the grievant's allegations, *id.* § 701.8(e), and render a decision within 25 calendar days of receipt of the grievance. *Id.* § 701.8(f). "Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant." *Id.* If the superintendent fails to respond within the required 25-day time limit, the grievant may appeal his grievance to the Central Office Review Committee (CORC") by filing a Notice of Decision to Appeal (Form # 2133) with the inmate grievance clerk. *Id.* § 5701.8(g). If a grievant intends to appeal the superintendent's response to the CORC, the grievant must do so within seven days of the receipt of that response. *Id.* § 701.8(h).

Generally, a plaintiff who fails to follow each of the required steps of the IGP has failed to exhaust his administrative remedies under the PLRA. *See Ruggiero*, 467 F.3d at 176. However, the PLRA "contains its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The Supreme Court explained this exception to mandatory exhaustion in *Ross*:

> Under § 1997e(a), the exhaustion requirement hinges on the "availability" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust . . has real content. . . . [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* at 1858-59 (quoting *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001)).

There are three circumstances in which a court may find a facility's internal administrative remedies are not available under the PLRA: (1) an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently

unwilling to provide any relief to aggrieved inmates; (2) an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use; and (3) an administrative remedy is not "available" when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. *See id.* at 1859-60; *Girard v. Chuttey*, 826 F. App'x 41, 44 (2d Cir. 2020).

**b. Analysis**

**1. Whether the IGP, in these Circumstances, was a Simple Dead End**

It is undisputed that Plaintiffs Gomez, Bonds, Smith, and Negron failed to fully utilize the IGP prior to commencing this action. Where, as here, defendants meet their initial burden of showing that administrative remedies exist and a plaintiff failed to exhaust them, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. *See Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *see also Coleman v. Nolan*, No. 15-CV-40 ATB, 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that the remedy was unavailable). As defendants state, the burden of production shifts to the plaintiff to demonstrate that the grievance process was unavailable. *See Woodward v. Lytle*, No. 16-CV-1174 NAM, 2019 WL 2527342, at *4 (N.D.N.Y. May 24, 2019); *see also White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017)(plaintiff bears the burden of demonstrating that other factors rendered a nominally available procedure unavailable as a matter of fact).

Plaintiffs point to evidence indicating that Investigator John Nocera conducted the

10

majority of the OSI's investigation of inmate grievances and allegations of assault that resulted from the June 2015 escape investigation, and that Nocera had participated in interrogating inmates at Clinton and Upstate during the June 2015 escape investigation. Plaintiffs also point to evidence indicating that during these interviews, inmates complained to Nocera about being assaulted by DOCCS personnel and showed Nocera injuries that resulted from those assaults. Further, Plaintiffs point to evidence indicating that several inmates reported that when they arrived at Upstate, they were denied medical attention for injuries they received from being assaulted, and that corrections personnel refused to photograph at least one inmate's injuries. In addition, Plaintiffs point to evidence that one of Matthews' grievances listed another inmate who had witnessed Matthews being assaulted by CERT Officers during the removal of inmates from Clinton on June 16, 2015, but Nocera misrepresented what this inmate stated and never took a written statement from him despite saying that he would. Moreover, Plaintiffs point to evidence that appears to indicate that OSI recommended that all inmate allegations of assault against the CERT Officers and other corrections officers be unsubstantiated because its investigation "revealed insufficient evidence to corroborate the allegation, inmates transferred out of Clinton Correctional Facility, during the June 2017 [sic] escape investigation, were assaulted by staff." Further, the OSI report states that none of the inmates "could identify any particular staff who may have caused such abuse and/or injuries," even though it appears that most of the inmates reported being unable to identify the CERT Officers that assaulted them because the CERT Officers did not have name tags, because inmates were ordered to look down and not look at the officers, were made to bend over to ensure their eyes remained on the floor, and reported being threatened

11

with violence if they did not keep their eyes on the floor. Still further, Plaintiffs point to evidence indicating that, although Nocera claims to have interviewed several CERT officers that Plaintiff Matthews identified in his grievance, some of these officers purportedly testified at depositions that they did not recall ever being questioned by OSI about inmate allegations of corrections officer misconduct that occurred during the June 2015 escape investigation and said that the first time they learned of inmates were making such allegations was when the New York State Attorney General advised them. Plaintiffs point out that the OSI report stated that none of the inmates were able to provide any witnesses to corroborate their allegations, and that a "[r]eview of medical records and photographic evidence revealed no additional evidence to corroborate the allegations." As to Plaintiff Bonds, Plaintiffs have presented evidence indicating that the Superintendent denied Bonds' grievance the day before the grievance was investigated by DOCCS supervisory security staff and adjudged to be without merit, providing some indication that the determination was made without full investigation.

     While this evidence is certainly susceptible to varying interpretations, Plaintiffs have met their burden of demonstrating that DOCCS personnel rejected grievances of employee harassment arising from 2015 Clinton escape investigation regardless of the merits of those grievances. On this record, the Court finds that a question of fact remains as to whether Plaintiffs' administrative remedies were available to them with respect to grievances against DOCCS personnel surrounding the escape investigation, or whether the IGP related to these grievances was a simple dead end. When questions of fact and issues of credibility exist regarding the failure to exhaust administrative remedies, a court should neither engage in fact finding nor make determinations as to credibility in

addressing a defendant's motion for summary judgment for failure to exhaust." *Curtis v. Bola*, No. 9:15-CV-00718 (GLS/TWD), 2016 WL 7735755, at *9 (N.D.N.Y. Nov. 1, 2016), *report and recommendation adopted*, 2017 WL 120945 (N.D.N.Y. Jan. 12, 2017) (listing cases). The Court finds that an evidentiary hearing is necessary in which the exhaustion issue can be determined as a matter of law. *See Messa v. Goord,* 652 F.3d 305 (2d Cir. 2011). Accordingly, that much of Defendants' motion to dismiss Plaintiffs Gomez, Bonds, Smith, and Negron's remaining claims is denied without prejudice to renewal after the evidentiary hearing.

### 2. Plaintiff Matthews' claims against 31 Clinton security staff defendants and OSI officer Skiff

Defendants argue that Plaintiff Matthews' claims against 31 Clinton security staff defendants and OSI officer Skiff must be dismissed because Matthews did not mention these officers in his grivence and, thus, he failed to exhaust administrative remedies as to these defendants. The Court does not agree.

> The Second Circuit has found that "the New York IGP regulations do not state that a prisoner's grievance must name the responsible party." [*Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009)]. Rather, the prisoner must provide, *inter alia*, "a specific description of the problem." *Id*. at 127; *see also* 7 N.Y.C.R.R. §§ 701.5(a)(2), 701.1(8). Thus, "[t]he pro se prisoner cannot be expected to infer the existence of an identification requirement in the absence of a procedural rule stating that the grievance must include the names of the responsible parties." *Espinal* at 127. "Where New York's grievance procedures do not require prisoners to identify the individuals responsible for alleged misconduct, neither does the PLRA for exhaustion purposes." *Id.* Ultimately, in order to exhaust, a prisoner must allege facts sufficient to alert corrections officials "to the nature of the claim," and "provide enough information about the conduct" at issue "to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *see also Espinal*, 558 F.3d at 126 ("The point is that prison officials ha[ve] the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the

13

> alleged incident"); *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) ("While this Court has found it appropriate to afford pro se inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally"). As stated by the Second Circuit, "[a]ll the grievance need do is object intelligibly to some asserted shortcoming." *Brownell*, 446 F.3d at 310.

*Green v. Haimes*, No. 9:18-CV-703 (BKS/ATB), 2019 WL 2775589, at *5 (N.D.N.Y. May 23, 2019), *report and recommendation adopted*, 2019 WL 2766544 (N.D.N.Y. July 2, 2019).

Here, Matthews satisfies the *Espinal* rule. His grievance filed at Upstate purportedly contains language indicating that he was "Assaulted by CERT at Clinton," and his grievances filed at Sullivan sufficiently describe the problem being complained of. Matthews' June 24, 2015 grievance states he was extracted and assaulted by CERT officers at Clinton Correctional Facility on June 16, 2015. *See* Dkt. 254-6 at CM/ECF p. 20. His June 25, 2015 grievance further specified that he was "viciously assaulted by CERT members in the hallway of Clinton C.F. and on the bus." *Id.* at CM/ECF p. 25. Although not fully exhausted, the allegations in the Sullivan grievances, when combined with the Upstate grievance, provide the prison with enough information to "alert the prison to the nature of the wrong for which redress [was] sought" in his exhausted grievance. *Espinal*, 558 F.3d at 127 (internal citation and quotation omitted). These grievances provide the specific date, location, and nature of the conduct complained of. As Plaintiffs argue, further information, such as the exact time of the extraction, the time Matthews was on the bus, and what other officers were present to witness the alleged conduct at those times would be easily discoverable by, *e.g.*, checking the facility log books for the areas at

14

issue. Thus, the prison officials had the necessary information to investigate the complaint and the opportunity to learn which officers were involved in the alleged incident. Matthews' grievances were "sufficient to advance the 'benefits of exhaustion'" *Id.* (quoting *Jones*, 549 U.S. at 219).

Defendants' reliance on *Hill v. Curcione*, 657 F.3d 116 (2d Cir. 2011) is misplaced. "In 2009, the Second Circuit explicitly addressed the issue of whether a DOCCS inmate was required to name the responsible party in his grievance, finding that 'New York's grievance procedures do not require prisoners to identify the individuals responsible for alleged misconduct, [therefore] neither does the PLRA for exhaustion purposes.'" *Green*, 2019 WL 2775589, at *6 (quoting *Espinal*, 558 F.3d at 127). "The district courts in this circuit have since relied on *Espinal* in rejecting such a requirement relative to claims falling under the purview of DOCCS administrative procedures." *Id.* (citing *Allen v. Keanen*, No. 13-CV-718, 2019 WL 1486679, at *2 (W.D.N.Y. Apr. 4, 2019); *Woodward v. Lytle*, No. 9:16-CV-1174 (NAM/DEP), 2018 WL 6179427, at *2 (N.D.N.Y. Nov. 27, 2018); *Tolliver v. N.Y. State Dept. of Corr. Serv.*, No. 08 Civ. 4561, 2009 WL 618371, at *4 (S.D.N.Y. 2009)). *Hill* concerned the grievance requirements at the Niagara County Jail. *Hill* is inapplicable to the instant matter "because the determination of whether a plaintiff has properly exhausted his administrative procedures turns on the specific grievance requirements of the facility where Plaintiff was confined." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper

15

exhaustion")). "The proper inquiry here . . . is whether plaintiff communicated the claim which he now presents in federal court in terms that allowed DOCCS to take appropriate responsive measures." *Id.* As indicated above, Matthews has done that.

The Court is not persuaded by *Turner v. Goord*, 376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005) because there the Court found the plaintiff's grievance, which complained of an instance of maltreatment by one nurse, did not sufficiently alert prison authorities to the potential liability of other medical staff and DOCCS personnel unrelated to the grieved incident. Here, by contrast, Matthews' grievances more broadly describe an ongoing event, *i.e.*, multiple assaults that occurred when he was extracted from his cell, removed from Clinton, and transported to Upstate. The prison authorities reasonably should have expected Matthews' allegations encompassed DOCCS personnel who witnessed these assaults and failed to stop them.

The Court is also not persuaded by *Coleman v. Cuomo*, No. 9:18-CV-0390 (MAD/CFH), 2019 WL 6829613, at *14 (N.D.N.Y. Dec. 13, 2019), *rep. rec. adopt. sub nom. Coleman v. Racette*, 2020 WL 896785 (N.D.N.Y. Feb. 24, 2020), where the court found that the plaintiff's grievance complaining of a single event on June 8, 2015 was insufficient to alert prison authorities to allegations made in plaintiff's complaint about conduct that occurred on June 25, 2015. Here, Matthews' claims and grievances are predicated on the single incident and injury that occurred on June 16, 2015.

Accordingly, Defendants' motion is denied to the extent it seeks to dismiss Plaintiff Matthews' claims against 31 Clinton security staff defendants and OSI officer Skiff.

### 3. Plaintiff Bonds' Claim of Opaqueness

Defendants' motion will be granted to the extent Bonds argues the he is excused from exhausting administrative remedies because the IGP is so opaque as to be unusable. The IGP regulations plainly describe a mechanism for appealing to CORC if a superintendent does not respond to a harassment grievance. DOCCS Directive # 4040 specifically states that, if a superintendent fails to respond to a grievance, the inmate may then appeal his or her grievance to CORC. *See* Directive 4040 at §§ 701.6(g)(2), 701.8(g), available at Def. Exh. C (2015 and 2016 versions of Directive # 4040); *see also* 7 N.Y.C.R.R. §§ 701.6, 701.8.  As Defendants argue, it is well-settled that DOCCS inmates must exhaust all levels of the IGP process even if they do not receive a response from the Inmate Grievance Resolution Committee ("IGRC") or superintendent. *See Dabney v. Pegano*, 604 Fed. Appx. 1, 4–5 (2d Cir. 2015) ("The IGP provides a clear timeline for appealing grievances to the [Central Office Review Committee ('CORC')], which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent. Plaintiff… had an unimpeded path to the CORC, notwithstanding his claims that the [facility] grievance clerk failed to process his complaint and that the ... superintendent ignored his appeal.") (internal citation omitted); *Heyliger v. Gebler*, 624 Fed. Appx. 780, 782 (2d Cir. 2015) (if a DOCCS decision maker fails to respond timely to a grievance under the IGP, the inmate must appeal to the next step in order to properly exhaust); *Patterson v. Ponte*, No. 16-CIV-3156, 2017 WL 1194489, at *3 (S.D.N.Y. Mar. 30, 2017) ("It is well settled that an inmate who receives no response to his grievance must continue with the next steps in the grievance process."), *rep. rec. adopted*, 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017).

17

Furthermore, Bonds' circumstances are distinguishable from the plaintiff in *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016), upon which Bonds relies. Unlike in *Williams* where a correction officer was alleged to have failed to file the plaintiff's grievance, Bonds successfully filed his grievance in the first instance. This fact distinguishes Bonds' circumstances from those in *Williams*. *See Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *6 (S.D.N.Y. Dec. 21, 2016) (distinguishing *Williams* and holding that "the IGP contemplates the circumstances in which Plaintiff found himself because the failure to render a timely decision at a lower level does not relieve a prisoner of the obligation to appeal to the next level"); *Hill v. Tisch*, No. 02-CV-3901, 2016 WL 6991171, at *7 (E.D.N.Y. Nov. 29, 2016) (Unlike *Williams*, this is not a situation where a prisoner gave his grievance to a corrections officer but the corrections officer never filed it). Furthermore, as indicated above, Bonds knew that his grievance had been received by the Superintendent because he was informed in a memo from the Superintendent dated July 13, 2015 that his grievance had been received and was being processed, *see* Bonds Decl. ¶ 9, and "[i]n September of 2015, [he] was interviewed by a Sergeant Corrections Officer about the complaints [he] had made in [his] June 30, 2015 grievance." *Id*. ¶ 10.

Defendants' motion will be granted to the extent it seek to dismiss Bonds' claim that he is excused for exhausting administrative remedies because the IGP is so opaque as to be unusable.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for partial summary judgment, Dkt. 254, is **GRANTED** in part and **DENIED** in part.

The motion is denied to the extent Defendants seeks to preclude Plaintiff Matthews from asserting claims against 31 Clinton security staff defendants and OSI officer Skiff on the grounds that Matthews failed to exhaust administrative remedies on these claims.

The motion is denied with leave to renew to the extent Defendants seek to dismiss Plaintiffs Gomez, Bonds, Smith, and Negron's remaining claims for failure to exhaust administrative remedies. Prior to trial, the Court will hold an evidentiary hearing to determine whether administrative remedies were available to Plaintiffs Gomez, Bonds, Smith, and Negron with respect to grievances against DOCCS personnel surrounding actions taken in connection with the 2015 escape investigation emanating from Clinton Correctional Facility. Defendants may renew their summary judgment motion following the conclusion of this hearing.

The motion is granted to the extent that Plaintiff Bonds is precluding from asserting that he is excused from exhausting administrative remedies on the grounds that the IGP was so opaque as to be unusable.

**IT IS SO ORDERED.**

Dated: March 17, 2022

Thomas J. McAvoy
Senior, U.S. District Judge