UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LUKE MATTHEWS; CARLOS GOMEZ;
GENTL BONDS; ROBERT SMITH; and
KASIEM CHAVES,

                      Plaintiffs,

v.                                                   9:17-CV-0503 (GTS/ML)

L. SWEENEY, Clinton Corr. Sergeant;
MICHAEL GUYNUP, Clinton Corr. Lieutenant;
CORR. EMERGENCY RESPONSE TEAM ("CERT")
OFFICER 44-3; CERT OFFICER 44-4;
CERT OFFICER 44-5; and CERT OFFICER 44-29;

                      Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

BEDLOCK, LEVINE & HOFFMAN           DAVID B. RANKIN, ESQ.
   Counsel for Plaintiffs                         JONATHAN C. MOORE, ESQ.
99 Park Avenue, 26th Floor                  MARC A. CANNAN, ESQ.
New York, NY 10016

HON. LETITIA A. JAMES                      DAVID C. WHITE, ESQ.
Attorney General for the State of New York     THOMAS A. CULLEN, ESQ.
   Counsel for Defendants                      MARK G. MITCHELL, ESQ.
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      The trial in this prisoner civil rights case, filed by the five above-captioned individuals ("Plaintiffs") against the six above-captioned employees of the New York State Department of Corrections and Community Supervision ("Defendants") pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on February 5, 2025, regarding the

affirmative defense of Defendants that Plaintiffs Gomez, Smith and Bonds failed to exhaust their available administrative remedies, as required by the Prison Litigation Reform Act, before filing this case on June 6, 2016 (their "exhaustion defense"). At the hearing, documentary evidence was admitted, and testimony was taken of Defendants' witnesses (particularly, Cory Proscia, Rachael Seguin, and Jonathan Nocera), as well as Plaintiffs' witnesses (particularly, Plaintiff Gomez, Plaintiff Smith, and non-party Manuel Nunez),[1] each of whom was able to be cross-examined by opposing counsel. At the conclusion of the hearing, the undersigned indicated that a written decision and order would follow. This is that written decision and order. For the reasons stated below, the claims of Plaintiffs Gomez, Bonds, and Smith are dismissed because of their failure to exhaust their available administrative remedies before filing this action.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Claims and Case's Relevant Procedural History

Generally, the surviving claims in this case assert violations of the Eighth Amendment and Title VI of the Civil Rights Act of 1964 by Defendants during an investigation, at Clinton Correctional Facility ("Clinton C.F."), in Dannemora, New York, into the escape of two inmates (David Sweat and Richard Matt) from Clinton C.F., in June of 2015, before those Plaintiff were

---

[1] Plaintiff Bonds did not testify. His proffered reason for not appearing was "I was given 20 minutes to ready [sic]. First made aware of leaving on the day I had to leave. I was physically incapable of [sic]." (Dkt. No. 373 [Refusal/Waiver of Right to Be Physically Present at Court].) The Order to appear was served on Plaintiff's counsel on January 15, 2025. (Dkt. No. 368.) At the exhaustion hearing, his counsel stated that, after speaking with Plaintiff Bonds on February 4, 2025, counsel had learned as follows: (1) Plaintiff Bonds claims that, in his 15 years' experience being incarcerated he "usually" gets a day's notice before he is transported to court; (2) here, he did not receive that one day's notice, but only twenty or thirty minutes' notice; and (3) as a result, he was not "prepared" because he had not showered and was not "groomed," and because he just suffered an injury in the gym so he had a "pain issue" as well. (Exhaust. Hrg. Tr.)

transferred to Upstate Correctional Facility ("Upstate C.F.") and Sullivan Correctional Facility ("Sullivan C.F."). (*See generally* Dkt. No. 298 [Plfs.' Third Am. Compl.].)

Generally, his Decision and Order of March 18, 2022, Senior U.S. District Judge Thomas J. McAvoy[2] left to be determined, through an evidentiary hearing, Defendants' exhaustion defense against the claims of Plaintiffs Gomez, Bonds, and Smith. (Dkt. No. 325, at 19.)[3] *Not* addressed at the evidentiary hearing are the following: (1) any exhaustion defense against the claims of Plaintiff Negron, which (although mentioned in Judge McAvoy's Decision and Order) were voluntarily discontinued on January 4, 2022 (Dkt. No. 310); (2) any exhaustion defense against the claims of Plaintiff Matthews, with regard to which Judge McAvoy denied Defendants' motion for summary judgment (*id*. at 13-16, 19), and Defendants have since effectively abandoned their exhaustion defense against the claims of Matthews (Dkt. No. 364);[4] and (3) any exhaustion defense against the claims of Plaintiff Chaves, with regard to which Defendants never moved for summary judgment (*see generally* Dkt. No. 254, Attach. 1, at 14 [attaching page "11" of Defs. Memo. of Law, stating, "At this time, defendants do not assert a failure to exhaust argument with respect to Chaves' sole surviving claim"]), and in any event Defendants have since effectively abandoned their exhaustion defense against the claims of

---

[2] This case was reassigned from Judge McAvoy to the undersigned on February 13, 2024. (Dkt. No. 356.)

[3] Although Judge McAvoy also stated in his Decision and Order that "Defendants may renew their summary judgment motion following the conclusion of this hearing" (Dkt. No. 325, at 19), such a renewed motion for summary judgment is unnecessary given the preponderance-of-the-evidence standard that governs the Court's determination in an exhaustion hearing, as stated in the undersigned's Text Order of February 2, 2024 (Dkt. No. 366).

[4] In addition, the Court notes that, on January 15, 2025, the undersigned's Courtroom Deputy, Shelly Muller, received an email message from defense counsel confirming the fact that Defendants will not be pursuing their exhaustion defense against the claims of Plaintiffs Matthews or Chaves at the exhaustion hearing.

Chaves (Dkt. No. 364).[5]

Because this Decision and Order is intended primarily for the review of the parties, the Court will presume the reader's familiarity with further details regarding Plaintiffs' claims and the relevant procedural history of this case.

### B. Parties' Arguments

#### 1. Defendants' Arguments

Generally, Defendants assert four arguments. First, Defendants argue, Plaintiff Gomez never filed grievances at either Clinton C.F. or Upstate C.F., regarding his current claims of mistreatment at Clinton C.F. on June 6, 2015, and June 16, 2015; and, although he filed two grievances at Sullivan C.F. on December 2, 2015, neither of those grievances regarded the claims asserted in this case. (Dkt. No. 254, Attach. 1, at 9-10 [attaching pages "6" and "7" of Defs.' Memo. of Law].) In any event, Defendants argue, Plaintiff Gomez never filed a grievance appeal regarding the claims he asserts. (*Id*.)

Second, Defendants argue, Plaintiff Bonds never filed grievances at either Clinton C.F. or Upstate C.F., regarding his current claims of mistreatment at Clinton C.F. on June 15, 2015; and, although, while at Sullivan C.F., he filed a grievance regarding his current claims, that grievance was denied by the Superintendent of Sullivan C.F., and Plaintiff Bonds never appealed that denial. (*Id*. at 10-11 [attaching pages "7" and "8" of Defs.' Memo. of Law].)[6]

Third, Defendants argue, Plaintiff Smith never filed grievances at Clinton C.F., Upstate

---

[5] *See, supra,* note 4 of this Decision and Order.

[6] Defendant argues that Plaintiff Bonds initially submitted this grievance to the Superintendent of Clinton C.F., who responded (through a representative) that it must be filed at Sullivan C.F. (Dkt. No. 254, Attach. 1, at 10-11 [attaching pages "7" and "8" of Defs.' Memo. of Law].)

4

C.F., or Sullivan C.F., regarding his current claims of mistreatment at Clinton C.F. on June 15, 2016, nor did he appeal the denial of any such grievances. (*Id*. at 12-13 [attaching pages "9" and "10" of Defs.' Memo. of Law].)

Fourth, Defendants argue, any argument that these Plaintiffs were not required to exhaust because the administrative procedure offered to them operated as a "simple dead end" is conclusory in nature. (Dkt. No. 286, at 7 [attaching page "5" of Defs.' Reply Memo. of Law].)

### 2.    Plaintiffs' Arguments

Generally, Plaintiffs assert three arguments. First, Plaintiffs argue, Plaintiffs Gomez, Bonds and Smith should be excused from having to exhaust their available administrative remedies because the administrative procedure offered by the New York State Department of Corrections and Community Supervision operated as a "simple dead end" for plaintiffs making the types of complaints in question (due to officers being consistently unwilling to provide any relief to aggrieved inmates). (Dkt. No. 281, at 11-19 [attaching pages "7" through "15" of Plfs.' Opp'n Memo. of Law]; Dkt. No. 372, at 2 [Plfs.' Ltr. Motion].) More specifically, Plaintiffs argue that Office of Special Investigations ("OSI") Investigator John Nocera was tasked with conducting "the majority" of the OSI's investigation of inmate grievances and allegations of assault that resulted from the June 2015 escape investigation (including interviews of several corrections officers and/or CERT officers), but that Nocera either did not conduct those investigations or misrepresented evidence that was provided to him during them. (*Id*.) As a result, Plaintiffs argue, OSI recommended that all inmate allegations of assault against the CERT Officers and other corrections officers be unsubstantiated. (*Id*.)

## II.     GOVERNING LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e.

The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."   *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).   In this regard, exhaustion serves two main purposes.   First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures."   *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).   Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."   *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."   *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Corrections and Community Supervision ("DOCCS") has made available a well-established inmate grievance

program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[1]

First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[2] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing.

Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.

Third, a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to

---

[1] *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

[2] The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

These procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she can apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application is denied, the inmate can file a complaint complaining that the application was wrongfully denied.[3] Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, *may* be appealed to the next level, including CORC, in order to complete the grievance process.[4]

The Court hastens to add, however, that, although an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed, it need

---

[3]    *See Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

[4]    *See* 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray,* 2010 WL 1235591, at *2 & n.4 [collecting cases]; *cf.* 7 N.Y.C.R.R. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

not be appealed in order for exhaustion to occur, because the regulatory scheme advising the inmate of that right has been found to be "too opaque." *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016) (finding that, "even if Williams technically could have appealed his [unprocesseed] grievance, we conclude that the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it pursuant to *Ross v. Blake*, 136 S. Ct. 1850 (2016)]").

Moreover, it is important to note that DOCCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

> A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;
>
> B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and
>
> C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

"An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. This is because certain exceptions exist to the exhaustion requirement.

In particularly, in 2004, in *Hemphill v. State of New York*, the Second Circuit held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. [citations and internal quotations omitted].

However, in 2016, in *Ross v. Blake*, the Supreme Court abrogated *Hemphill*'s third prong

10

and effectively enveloped its second prong within its first prong. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). More specifically, under *Ross*, any inquiry that previously would have been considered under the second or third prongs of *Hemphill* is now considered entirely within the context of whether administrative remedies were actually available to the aggrieved inmate. *Ross*, 136 S. Ct. at 1858. This is because, the Supreme Court explained, the PLRA "contains its own, textual exception to mandatory exhaustion." *Id*. In particular, 42 U.S.C. § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. *Id*. In the PLRA context, the Supreme Court determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. at 1859 (quotation marks omitted).

To guide courts in this new analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross*, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

Finally, two additional points bear mentioning regarding exhaustion hearings. First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather,

PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of proving that a prisoner has failed to exhaust his available administrative remedies.[5] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the Court of either exhaustion or unavailability.[6] As a result, practically speaking, while the burden of proving this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

### III.  ANALYSIS

After carefully considering the admissible record evidence adduced at the exhaustion hearing, the Court renders the following three factual findings: (1) Defendants have met their burden of proving that Plaintiffs Gomez, Smith and Bonds failed to exhaust their administrative remedies regarding the claims in question before filing this action; (2) Defendants have also met their burden of proving that administrative remedies were generally available to those Plaintiffs during the time in question (e.g., that the grievance procedure was working at Upstate C.F. and Sullivan C.F. during the time in question); and (3) Plaintiffs have *not* persuaded the Court that, at Upstate C.F. and Sullivan C.F. during the time in question, the grievance procedure operated as a

---

[5]    *Id.* at *4 [citation omitted].

[6]    *Id.* at *4 & n.17 [citing cases]; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (noting that special circumstances must be "plausibly alleged, . . . justify[ing] the prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

"simple dead end" (with officers unable or consistently unwilling to provide any relief to aggrieved inmates).

In support of the first factual finding, the Court relies on the following: (1) the fact that Plaintiffs' counsel conceded at the exhaustion hearing that Plaintiffs Gomez, Smith and Bonds failed to exhaust their administrative remedies regarding the claims in question before filing this action; and (2) alternatively, the hearing exhibits admitted during the hearing testimony on that subject by Cory Proscia and Rachael Seguin, as well as those witnesses' convincing demeanor and body language (including, but not limited to, their tone of voice, facial expressions, and eye contact).

In support of the second factual finding, the Court relies on the following: (1) the fact that Plaintiffs' counsel conceded at the exhaustion hearing that Plaintiff Chaves, Plaintiff Matthews, and non-party Manuel Nunez were able to exhaust their available administrative remedies regarding claims of excessive force during their removal from Clinton C.F.;[7] and (2) alternatively, the hearing exhibits admitted during the hearing testimony on that subject by Cory Proscia and Rachael Seguin, as well as those witnesses' convincing demeanor and body language (including, but not limited to, their tone of voice, facial expressions, and eye contact).

In support of the third factual finding, the Court relies on the following: (1) the hearing

---

[7]  The Court notes that the fact that Plaintiff Chaves, Plaintiff Matthews, and non-party Nunez were able to exhaust their administrative remedies regarding their treatment during transfer from Clinton C.F. to Upstate C.F. is at least some evidence that that the grievance process was available during the time in question. *See Moreau v. Ellsworth*, No. 21-2997, 2023 WL 3477153, at *2 (2d Cir. May 16, 2023) ("[T]he record evidence demonstrates that Moreau and other inmates at Eastern were able to appeal from several unfavorable IGRC decisions during the same period. There is thus no basis to conclude that the inmate-grievance process was unavailable.").

exhibits admitted during and after[8] the hearing testimony of OSI Investigator Jonathan Nocera, as well as his convincing demeanor and body language (including, but not limited to, his tone of voice, facial expressions, and eye contact); (2) the unconvincing demeanor and body language of non-party Manuel Nunez, Plaintiff Gomez,[9] and Plaintiff Smith,[10] during their hearing testimony (including, but not limited to, their tone of voice, facial expressions, and eye contact or lack thereof); (3) the fact that, at the exhaustion hearing, Plaintiff Bonds chose to not even testify that he viewed the process as a "dead end" (much less subject himself to cross-examination on

---

[8]   The Court notes that, after the hearing testimony of Nocera, Plaintiffs' counsel submitted into evidence selected portions of the deposition testimony of several CERT Officers testifying that they do not recall having been interviewed by OSI or DOCCS regarding the allegations in question in 2015 (at Hrg. Exs. P-10, P-11, P-12, P-13, and P-14). Defendants' counsel objected to the admission of these selected portions of the deposition testimony, and the Court reserved decision on this issue. After carefully considering the matter, the Court admits these exhibits into the record, because they do not change the outcome of the Court's decision. In addition to the fact that nearly six years passed between the interviews and the depositions, the Court is persuaded by the credible testimony of Nocera that the interviews occurred (as well as the corroborating documentary evidence).

[9]   For example, the Court does not find credible Plaintiff Gomez's hearing testimony that (1) he tried to file a grievance at Upstate C.F. regarding the claims at issue but was unable to do so because of a sign on his cell gate, and (2) he did not try to file such a grievance at Sullivan C.F. because he was threatened by unidentified officers (or anyone else) there. (Exhaust. Hrg. Tr.) The Court notes that it has carefully considered this testimony as potentially relevant to both the first circumstance of unavailability described in *Ross*, 136 S. Ct. at 1859-60 (regarding when the administrative procedure operates as a "simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates") and the third circumstance of unavailability described in *Ross* (regarding when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").

[10]   For example, the Court does not find credible Plaintiff Smith's hearing testimony that he did not file a grievance at Upstate C.F. regarding the claims at issue because of a sign on his cell gate and/or because CERT officers had instructed medical staff not to give him treatment. (Exhaust. Hrg. Tr.) Again, the Court has carefully considered this testimony as potentially relevant to both the first and third circumstances of unavailability described in *Ross*, 136 S. Ct. at 1859-60. *See, supra,* note 9 of this Decision and Order.

the issue);[11] and (4) alternatively, the fact that, on June 30, 2015, Plaintiffs Bonds chose to file a grievance at Sullivan C.F. regarding the claims at issue in this action on June 30, 2015,[12] which constitutes at least some evidence that Bonds did not view the process as a "dead end."[13]

In addition, the Court makes the following three points.  First, the Court rejects Plaintiffs' post-hearing argument that "the purpose of the [exhaustion] hearing was not to assess whether Mr. Bonds failed to exhaust administrative remedies" but "to assess the weight of Plaintiffs' evidence that DOCCS's summarily rejected inmate complaints of harassment during the 2015 escape investigation and the credibility of the DOCCS employee who conducted the majority of that investigation—John Nocera." (Dkt. No. 378, at 1-2.)  Contrary to Plaintiffs'

---

[11] *See Woodward v. Lytle*, 16-CV-1174, 2019 WL 2527342, at *8 (N.D.N.Y. May 24, 2019) (Peebles, M.J.) (recommending dismissal for failure to exhaust, because "plaintiff who bore the burden of production to demonstrate unavailability of the grievance process failed to meet that burden in failing to present any evidence [at the exhaustion hearing], including his own testimony, that would indicate that Ms. Hartz, or any defendants, refused to file a grievance while he was housed in the SHU at Cape Vincent"), *report-recommendation adopted*, 2019 WL 2524756, at *1 (N.D.N.Y. June 19, 2019) (Mordue, J.).

[12] (*See* Dkt. No. 254, Attach. 2, at 12 [Ex. C to Pinsonnault Decl., attaching copy of grievance from Bonds dated June 30, 2015]; Exhaust. Hrg. Ex. D-10.)

[13] *See Walker v. Ball*, 16-CV-0437, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018) (Stewart, M.J.) ("While Plaintiff did not file any grievances regarding the alleged misconduct of Noonan and St. Johns . . . , he did file grievances regarding other issues. . . .  This shows that Plaintiff did not view the filing of grievances as a dead end."), *report recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018) (Hurd, J.); *Lapierre v. LaValley*, 15-CV-1499, 2019 WL 4015689, at *5 (N.D.N.Y. Aug. 26, 2019) (Stewart, M.J.) (rejecting an asserted "dead end" exception and granting a motion for summary judgment because the plaintiff's prior filings "show[ ] that [he] did not view the filing of grievances as a dead end") (citation omitted), *report and recommendation adopted*, 2019 WL 4686415 (N.D.N.Y. Sept. 26, 2019) (D'Agostino, J.), *aff'd*, 847 F. App'x 47 (2d Cir. 2021).  The Court notes that the fact that Plaintiff Bonds lost this grievance is not evidence that it was a dead end.  *See McMillian v. Walters*, 16-CV-0277, 2018 WL 879270, at *3 (N.D.N.Y. Feb. 14, 2018) (D'Agostino, J.) ("Plaintiff did not provide any evidence that would suggest that the administrative procedures act as a dead end. Although Plaintiff stated in his deposition that the grievance process 'didn't do anything' for him in the past . . . , a record of administrative defeats for a single prisoner is not sufficient evidence to effectively indict the system.").

interpretation of Judge McAvoy's Decision and Order of March 18, 2022, his finding that "Plaintiffs have met their burden of demonstrating that DOCCS personnel rejected grievances of employee harassment arising from [the] 2015 escape investigation regardless of the merits of those grievances" was merely a ground to deny Defendants' motion for summary judgment on the issue of exhaustion (the success of which turned on whether Plaintiffs failed to exhaust as a matter of law). (Dkt. No. 325, at 12.)[14] The question of fact that remained for the exhaustion hearing (the outcome of which turns on a mere preponderance of the evidence) was "whether Plaintiffs' administrative remedies were available to them with respect to grievances against DOCCS personnel surrounding the escape investigation, or whether the IGP related to these grievances was a simple dead end." (*Id.*) Simply stated, the rejection-of-grievances-regardless-of-the-merits fact identified by Plaintiffs was left to be proven by them at the exhaustion hearing, unless it was conceded by Defendants (which it was not). Furthermore, although the Court has certainly considered Plaintiffs' hearing evidence as applying to *all* Plaintiffs (including Plaintiffs Bonds), the Court simply finds that evidence unconvincing for the reasons stated above and below.

Second, to prove that a grievance process operated as a dead end, a plaintiff must show that the grievance process "could not lead to a change in the challenged prison policies." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021), *cert. denied sub nom. Green Haven*

---

[14] To be clear, the "burden" referenced by Judge McAvoy regarded Plaintiffs' modest burden in opposing Defendants' motion for summary judgment, not their shifted burden of persuasion at a subsequent exhaustion hearing (during which the Court might evaluate the credibility of Plaintiffs' testimony under cross-examination). *See, supra,* Part II of this Decision and Order (setting forth legal standard).

*Preparative Meeting v. New York State Dep't of Corr. & Cmty. Supervision*, 142 S. Ct. 2676 (2022). As the Second Circuit explained in *Green Haven*,

> Plaintiffs . . . appear to make a futility argument, claiming that the grievance process was 'a dead end' such that they were not required to exhaust administrative remedies. . . . The bar for the availability of remedies, however, is low. To constitute an 'available' remedy, a process requires only 'the *possibility* of some relief.' *Ross v. Blake*, 578 U.S. 632, 643, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016) (emphasis added) (quotation marks omitted). Here, the Incarcerated Plaintiffs provide no evidence that a grievance asserting that a prisoner's religious liberty has been violated by a limitation on the number or timing of religious services or celebrations could not lead to a change in the challenged prison policies. Plaintiffs are thus unable to avoid the exhaustion requirement, and the Incarcerated Plaintiffs' RLUIPA claims fail.

*Green Haven*, 16 F.4th at 82 [emphasis in original]. A plaintiff has not met this burden simply by *arguing* that DOCCS never approved a grievance similar to the sort at issue in his case. *See Wright v. Georgia Dep't of Corr.*, 820 F. App'x 841, 845 (11th Cir. 2020) ("Wright argued that the grievance process was an unavailable dead end because the wardens had never approved an inmate grievance involving medical treatment; however, he provided no factual support for this assertion. Accordingly, the district court did not err in concluding that the defendants satisfied their burden to show the failure to exhaust an available remedy and Wright failed to show that the remedy was effectively unavailable to him.").

Third, the fact that Mr. Nunez may have experienced a problem submitting his claim to Investigator Nocera – particularly when Nocera was trying to investigate the claim of Plaintiff Matthews[15] – hardly establishes that the problem asserted by Nunez was systematic. *See Barksdale v. Annucci*, 15-CV-0560, 2016 WL 4708235, at *3 (N.D.N.Y. Aug. 4, 2016) (Stewart,

---

[15] The Court notes that, at the exhaustion hearing, Mr. Nunez testified that, as Investigator Nocera was attempting to question him regarding the claim by Plaintiff Matthews on July 2 or 3, 2015, at Sing Sing C.F, Mr. Nunez attempted to remind Plaintiff about his own claim and did not receive a satisfactory response. (Exhaust. Hrg. Tr.)

17

M.J.) ("As evidence of systematic delays, Plaintiff cites several grievances filed by other inmates, which he notes were not stamped as received until as long as a week and a half after they were dated. . . . [T]his evidence is insufficient to establish a pattern of systematic delays in the processing of grievances at Coxsackie."), *report-recommendation adopted*, 2016 WL 4703740 (N.D.N.Y. Sept. 8, 2016) (Kahn, J.).  This is particularly true given that, contrary to Plaintiff's argument that Investigator Nocera was tasked with conducting the "majority" of the OSI's investigation of inmate grievances and allegations of assault that resulted from the June 2015 escape investigation (Dkt. No. 372, at 2 [Plfs.' Ltr. Motion]; Dkt. No. 281, at 6-7 [attaching pages "2" and "3" of Plfs.' Opp'n Memo. of Law]), in fact, it appears (based on the available record evidence) that Nocera conducted fewer than half of those investigations.[16]  In any event, regardless of whether Nocera conducted more than half of the investigations, the fact that other investigators existed further weakens Mr. Nunez's claim that Investigator Nocera's (purported) inaction rendered the entire procedure a "dead end."

For each of these numerous alternative reasons, the claims of Plaintiffs Gomez, Smith and Bonds are dismissed.

**ACCORDINGLY**, it is

**ORDERED** that the claims of Plaintiffs Gomez, Smith and Bond in their Third Amended Complaint (Dkt. No. 298) are **<u>DISMISSED</u>** for failure to exhaust their available administrative

---

[16]    More specifically, it appears that, of the 35 OSI Interview Statements in the record that indicate the name of the investigating officer, 16 of those statements identify that officer as Jonathan Nocera, seven identify him as James Lovelace, four identify him as Christopher Payant, three identify him as Scott Lustan, three identify him as Ryan Graziano, one identifies him as Felix Cotto, and one identifies him as Investigator Retrosi.  (Dkt. No. 281, Attach. 9, at 3-8, 10, 12-17, 19, 20, 22-24, 26, 28, 30, 32, 33, 36, 38, 40, 42-45, 47, 49, 52, 55, 56 [Ex. 7 to Cannan Decl., attaching "OSI Interview Statements"].)

remedies before filing suit.

Dated: February 10, 2025
      Syracuse, New York

                                       Glenn T. Suddaby
                                       U.S. District Judge